*June,* 1809.

PHELPS
v.
ELLS-
WORTH.

Judgment reversed.

————◆————

JAMES PHELPS and others *against* ABIGAIL ELLSWORTH
and others.

WRIT of error.

This was a petition in chancery brought to the superior court, by the honourable *Oliver Ellsworth*, deceased, stating that *James Phelps* and *James Phelps*, jun. being indebted to him, in the sum of 2,569 dollars and 49 cents, gave their note, payable the 1st of *May*, 1805, on interest, and conveyed, by deed of that date, seven pieces of land, as collateral security; and on the 4th of *March*, 1803, they became further indebted, in the sum of 1,000 dollars, payable at the same time with the former; and as collateral security for the 1,000 dollars, executed a deed of *four other pieces* of land, together with the same lands contained in the first mortgage: That the equity

Upon a bill of foreclosure by a mortgagee holding separate mortgages for distinct debts, chancery will decree a foreclosure, upon the failure of the mortgagee, to pay *both* debts, and will not make separate decrees for each debt.

June, 1809.

PHELPS
v.
ELLS-
WORTH.

of redemption of *James Phelps*, jun. had been attached; and that of *James Phelps*, the elder, had been by him conveyed to others, who were made parties to the bill: that the money all remained due—praying for a foreclosure.

None of the respondents, except *James Phelps*, (then called junior,) appeared. And upon inquiry, the court found the facts stated in the petition, to be true; and found due upon the *two mortgages*, 4,531 dollars, and decreed, that if the respondents failed to pay this sum within a limited time, they should be foreclosed of their equity of redemption.

The widow and children of the petitioner, and the administrators upon his estate, were made parties to the writ of error. All the plaintiffs in error, except *James Phelps*, were nonsuited.

The error assigned was, that all the lands contained in the last deed, was made subject to the payment of the debt, secured by the first.

*Ingersoll* and *Dwight*, for the plaintiffs in error.

These mortgages were made at different times, for different sums, and were entirely separate and distinct; and there should have been separate and distinct decrees relative to each of them, *viz.* that on the payment of 2,500 dollars, and interest, the mortgagee should release all the title he derived from the first conveyance; and on the payment of 1,000 dollars, he should release all the title he derived from the second deed. Had the mortgagor petitioned to redeem the lands comprised in the second mortgage, without the other, he ought to have been permitted to redeem them. There can be no more connection between two separate contracts, by the same

person, than between two contracts by different persons.
The lands are each charged with its own burdens; and
the one ought not to be onerated with the debts of the
other.   The object of a court of chancery, as to mort-
gages, is to place the mortgagor, after the law day, in
the same situation he was in before.   Before the law day,
*James Phelps* might have paid the 1,000 dollars, and
interest, and the last mortgaged lands would have been his
own, unencumbered.   Chancery will then permit him,
upon the same terms, to effect the same thing.   The
most of the cases in the books, where the court compel-
led a redemption of both mortgages, are cases where
the security was deficient; as in *Purefroy* v. *Purefroy*,
1 *Vern.* 28.   But to sanction this decree, is to adopt the
whole system of tacking debts to encumbrances on real
estate; for there is the same equity for a mortgagee,
that his bond or note should be paid, as that his other
mortgages should be.   But in this way, the law requi-
ring deeds to be recorded would be of no effect; because,
in cases of mortgages, the debt would not depend upon
the original contract, but upon the state of accounts be-
tween the parties, when the application is made.

But however this may be, where the mortgagor peti-
tions, the mortgagee cannot, upon his own application,
enforce the redemption of both mortgages, or neither,
and thus vary his own contract. *Pow. on Mort.* 511—517.
He now asks, that the court will not permit the lands
last mortgaged, to be free from the encumbrance upon
the payment of principal and interest.   This is asking
the court to place him in a better situation than he
placed himself; because he is not willing to take, what
before the law day expired he might have been com-
pelled to accept.   But the language of the petition is,
that he should have the principal and interest upon each
contract.

*Gould* and *R. M. Sherman*, for defendants in error.

Natural justice requires that a mortgagor, whose estate is forfeited at law, should pay to the mortgagee all he owes him, before the latter should be compelled to give up the security he holds. And formerly chancery would not permit a redemption, until all moneys borrowed of the mortgagee, were paid. The rule now applies to cases only, where the loan is secured by mortgage. But as to mortgages, the rule has never been relaxed, and in justice should have retained its ancient force in all cases. Had the mortgagor made application to redeem, he must have redeemed both. *Margrave* v. *Le Hooke*, 2 *Vern.* 207. *Pope* v. *Onslow*, 2 *Vern.* 286. *Reason* v. *Sacheverell*, 1 *Vern.* 41. *Jones* v. *Smith*, 2 *Ves.* jun. 376. Although in some of these cases, it is said, that the mortgage or one of the mortgages is deficient in value, yet in none of them is it the principle of adjudication; in several of them, it is not even suggested. *Powell* indeed intimates, that the court is less liberal to the mortgagee, when the application comes from himself, but cites no authority in support of the remark, affecting this case. The case he states, is that of a mortgage and a bond debt; in such case, he says, if mortgagor petitions, he must pay the bond debt, as well as mortgage, but if mortgagee is plaintiff, *it seems* (he says) that he can enforce payment of the mortgage debt only. If any such rule or difference exists, it applies only to those cases where an *original equity* is sought, as where an obligee prays for more than the penalty of a bond; but not to cases like this, where the petitioner asks for no equity in *his favour*, but only that the mortgagor may exercise *his* equitable rights in a reasonable time. The fact that the first land was included in the second mortgage, shows, that the parties designed that the whole land should be security for each debt.

But if a decree were made upon the principles con-
tended for, or this decree reversed, it could be of no
possible benefit to the mortgagor; for if he should pay
the money due on one mortgage, and the mortgagee
should refuse to reconvey, unless both debts were paid,
the mortgagor must then apply to a court of chancery
to compel a conveyance. Upon that application, he,
being plaintiff, must, according to the principles laid
down from *Powell*, first satisfy both debts, before he
could gain the legal title to either of the estates.

This decree then, only effects directly, what then
would be done circuitously.

BY THE COURT.

At law, both mortgages are forfeited; the mortgagee
has a legal title to both. The only inquiry is, what is
equitable between the parties. All agree, that the
mortgagor, on his petition, cannot redeem one mortgage
without the other. The reason assigned is, that as his
relief is in equity only, he shall do equity to obtain it.
The principle guiding such decisions is, that it is *equi-
table* he should redeem both, or neither; and surely it
cannot vary the principle, and ought not to alter the
rule of equity, between the parties, that one, or the
other, applies for it, unless the situation of the party
seeking relief, requires an extraordinary interposition of
the court.

This is the usual application, by the mortgagee, not
seeking an original equity, but simply, that the court
will limit the time, within which the mortgagor shall
exercise his equitable rights. His equitable rights are,
to redeem on paying all that is due upon both mort-
gages. This principle extends to all mortgages exist-
ing between the same parties, whether they embrace

June, 1809.

the same land in part, as in this case, or are wholly distinct, and independent. And were the court to adopt a different rule, and separate these mortgages, by their decree, and limit the time of redemption for each, the mortgagee might refuse the money, and compel the mortgagor to seek relief. The court would then decree that, which we think equity requires should now be decreed. We perceive nothing erroneous in the record.

Judgment affirmed.