## FRINK *against* BRANCH and others.

On a bill of foreclosure, it is incumbent upon the plaintiff to allege a title in himself, either legal or equitable, to the land mortgaged, and to establish such title, at least *prima facie,* by proof; and the defendant, on the other hand, has a corresponding right to attack it.

*B,* contemplating a partnership connexion with *C,* in the business of manufacturing satinet cloths, and being the sole owner of the land, works, machines and implements suitable for that purpose, conveyed, on the 5th of *May,* 1836, one half thereof to *C,* for a consideration moving entirely from him in his individual capacity; and on the same day, a partnership between *B* and *C* was formed and the property in question was subsequently used by them, for partnership purposes. Several other partnerships were afterwards formed and dissolved, of which *B* continued to be a member, and by which this property continued to be used in the same business. In the articles of one of these partnerships, formed on the 14th of *June,* 1837, this property was re-

ferred to, as real estate owned by the partners in common, *B* owning one half, and the other partners the other half. During this period, the title which appeared upon the public records, was a tenancy in common ; and there was no agreement that it should be considered otherwise. The value of the property was somewhat enhanced, by improvements upon it, and additions to it, made from the avails of the partnership business, principally, if not wholly, before the partnership of *June*, 1837. On the 11th of *July*, 1837, *B* being indebted, in his individual capacity, to *A*, by a note for 787 dollars, mortgaged to *A*, as security therefor, "one undivided half of a satinet factory, situate, &c., [describing the property in question,] together with the one half of all the machinery and other appurtenances thereunto belonging." *B* and *C*, at this time, owned a small piece of land adjoining the mortgaged premises, which was not, by express terms, included in the mortgage deed. In *May*, 1840, *B* mortgaged to his partners the property previously mortgaged by him to *A*, to secure one half of the company debts, and a certain note for 643 dollars ; and about the same time, *B* became bankrupt, and absconded. He was then indebted to the partnership in a sum about equal to his interest in the property in question. On a bill of foreclosure, brought by *A* against *B* and the second class of incumbrancers, it was held, 1. that if the property in question was partnership stock, when it was mortgaged by *B* to *A*, and *A* had notice, actual or constructive, of that fact, the solvent partners would have a lien upon it for the payment of debts due from the partnership, as well as for the balance due from *B* to the partnership ; but 2. that in consequence of the conveyance from *B* to *C*, in *May*, 1836, *B* and *C* became tenants in common of the property, as of real estate, and such they remained, notwithstanding the partnership and the use of the property for partnership purposes; 3. that the mortgage deed of *July*, 1837, from *B* to *A*, conveyed the interest of *B*., not only in the factory building and the land covered by it, but in other land used with it, necessary or convenient for its use, as well as in the water privileges, implements, &c.; 4. that as this deed *might* convey the adjoining lot, and there were no facts to show that it did not, the court could not pronounce it void, on the ground of its purporting to convey an undivided interest in a distinct and separate part of a larger parcel held in common.

Where the condition of a mortgage deed, given to secure a debt by note, described the note as one for the *penal* sum of 787 dollars, and the note produced was for that sum, without a penalty ; it was held, that the deed was not invalid for want of reasonable certainty in the description of the mortgage debt.

Where the interest due on a note, secured by mortgage, was indorsed on such note as paid, but was in fact no otherwise paid than by a new note of the mortgagor, which was not paid; it was held, that this was no payment of such interest, and the mortgagee was entitled to have it, notwithstanding such indorsement, included in a decree of foreclosure, not only as against the mortgagor, but also as against subsequent incumbrancers.

Where *B* executed to *A*, at different times, two mortgages of separate parcels of land, to secure distinct debts ; on a bill of foreclosure, brought by *A* against *B*, and subsequent incumbrancers, it was held, that *A* was not entitled to a decree foreclosing such subsequent incumbrancers of all right to redeem either mortgage, upon failure to pay both, but they were entitled to redeem one of such mortgages, without the other.

THIS was a bill in chancery, to foreclose mortgaged premises. Three of the defendants, *viz.*, *William C. Sterling*, *Al-*

*Litchfield,*
June, 1844.

Frink
*v.*
Branch.

bert *Moore* and *Silas B. Moore,* filed a cross-bill; and the parties were heard on such bill and cross-bill, in relation to the facts in controversy, before a committee appointed by the court for that purpose. An abstract of the facts found by that committee, will furnish a sufficient statement of the case.

On the 9th of *March,* 1835, *Simon Branch* mortgaged to the plaintiff, certain parcels of land in *Salisbury,* to secure to the plaintiff, the sum of 1300 dollars, which *Branch* owed him, by a promissory note of that date, for that sum, payable on demand, with interest. There is now justly due upon this note, thus secured, the sum of 1404 dollars, including the interest thereon; and this sum remains a valid incumbrance upon the mortgaged premises; which sum said *W. C. Sterling, Albert Moore* and *S. B. Moore,* are ready and willing to pay.

On the 11th of *July,* 1837, *Branch,* on his own separate account, for his own private and individual purposes, became indebted to the plaintiff, in the sum of 787 dollars, 39 cents, for which he gave his promissory note, in the following terms: " *Salisbury, July* 11th, 1837. For value received, I promise to pay *Elijah Frink,* 787 dollars and 39 cents, at or before the 9th day of *March,* 1838, and if not then paid, with annual interest till paid. *Simon Branch.*" At the same time, *Branch* conveyed to the plaintiff, by deed of that date, certain real estate, thus described: " The one equal, undivided half of a satinet factory, situate in the *North* part of *Salisbury,* and near *Sterling, Landon & Co's* furnace, it being the same factory that the other half is now owned by *Landon, Branch & Co.,* together with the one half of all the machinery, and other appurtenances thereunto belonging. To have and to hold the above granted premises, with the appurtenances thereof, unto him," &c. To this deed, there was annexed the following condition: " Whereas the said *Simon Branch* has this day given and executed to me, the subscriber, his promissory note, for the penal sum of 787 dollars and 39 cents, this day dated, and made payable the 9th day of *March,* 1838, and if then not paid, with interest, to be paid annually till paid: now, if said *Branch* pays said note, according to the tenor and effect thereof, then this deed to be void; otherwise, to remain in full force and virtue. *Elijah Frink.*" The last-mentioned

note, and the condition of the mortgage deed, are in the handwriting of the plaintiff, who is not a lawyer, nor well acquainted with technical language. There is now due on such note and mortgage, the sum of 1007 dollars, 85 cents.

On the 5th of *May*, 1836, and some time before, *Branch* owned and possessed certain clothier's works, situated at *Chapinville*, in *Salisbury*, consisting of tools, implements and machinery, and water privileges; also certain lands upon which the clothier's works were erected, as well as some land adjoining thereto. On said 5th of *May*, *Branch*, in consideration of 1300 dollars, received of *Frederic A. Sterling*, executed to him an absolute deed, describing the premises thereby conveyed thus: " The one half of a tract of land lying in said *Salisbury*, bounded, &c., together with half of all the buildings, clothier's works, and half of the machines, and tools and implements of every kind, belonging to or used in and about said works, together with the right of flowing said *Branch's* other land adjoining the pond, by raising the water therein as high as may be, without affecting the mills and works on the stream above said clothier's works."

On the same day that the last mentioned deed was executed, *Branch* and *F. A. Sterling* entered into a copartnership, by a parol agreement, for the purpose of manufacturing satinet cloths at said clothier's works; and thereupon, *F. A. Sterling* purchased of *Branch*, the one half of said clothier's works, and property, real and personal, described in the last mentioned deed, *Branch* retaining the other half of said property. It was part of the copartnership agreement, that the clothier's works, and the property described in said deed, and by virtue of said deed by them owned as tenants in common, should be held and used by them, in carrying on the business of manufacturing satinet cloths, as stipulated in their copartnership agreement; and said property was in fact thus held and used. Beyond this, *Branch* furnished very little capital for the business. In order to prosecute it successfully, it became necessary to improve and enlarge the clothier's works, and to make additions thereto and alterations therein; also to purchase additional tools, machinery, &c. And accordingly, *Branch* and *F. A. Sterling*, as copartners, considerably enlarged and improved said works, machines and tools, and, as such copartners, expended considerable sums of money for

such purposes, (the precise amount not being ascertained,) and thereby considerably increased the value of said works. They continued to prosecute said business, as copartners, until the 29th of *August,* 1836 ; when *F. A. Sterling,* by deed of that date, conveyed all his interest in the property in question to *Elisha Sterling, William C. Sterling* and *George W. Sterling,* who thereupon succeeded *F. A. Sterling* in said business ; and as copartners with *Branch,* prosecuted it until the 3d of *December,* 1836 ; when *Elisha Sterling* died, and his interest in said property, upon his death, became vested in *George W. Sterling,* one of his devisees and heirs at law.

During the continuance of the last-mentioned copartnership, considerable improvements were made, by the partners, in the works, tools and machinery, by which the value of the property was increased.

On the 6th of *March,* 1837, *William C. Sterling* and *George W. Sterling,* conveyed, by separate deeds, the former three fifths, and the latter the whole, of " one undivided fourth part of a certain piece of land, situate at *Chapinville,* with the satinet factory and other buildings standing thereon, and all the privileges of water, and all other privileges belonging thereto," to *Schuyler Pratt, Henry Belcher, Horace Landon, Albert Moore* and *Silas B. Moore. George W. Sterling* thus disposed of the whole of his interest in the property, and relinquished the business.

In the prosecution of the business, by the successive copartnerships, each copartnership succeeded to all the rights, property and liabilities of the preceding one.

On the 14th of *June,* 1837, *Branch, William C. Sterling, Horace Landon, Albert Moore, Silas B. Moore, Schuyler Pratt* and *Henry Belcher,* formed a copartnership, by written articles of agreement, of that date, for the purpose, under the name of *Landon, Branch & Co.,* of prosecuting the business at said factory. In one of these articles, this property was referred to, as being owned by the partners in common, *Branch* owning one half, and the other partners the other half. Another article providing for the withdrawal of a member from the copartnership, and referring to such an event, contained the following clause : "When the whole concern of said company shall be settled up and divided ac-

cording to the respective rights of the partners, so far as con-
cerns the partner withdrawing; and in case either partner
shall wish to dispose of his share of the real estate owned by
said company, he shall give the other partners the first offer
of it." During the existence of the last-mentioned copartner-
ship, considerable additions were made, by the copartners, to
said works, machinery and tools, whereby the value thereof
was increased.

On the 21st of *May*, 1840, *Branch* executed to *William
C. Sterling, Schuyler Pratt, Henry Belcher, Horace Lan-
don, Albert Moore* and *Silas B. Moore,* his copartners, a
mortgage deed of the same premises described in the two
mortgage deeds of *Branch* to the plaintiff, conditioned that
*Branch* should pay to *Sterling, Landon & Co.*, a note due to
them from him, of 643 dollars, and should also pay one half
of the company debts due from *Landon, Branch & Co.*

About the time of the last-mentioned mortgage, *Branch*
became wholly insolvent, and absconded from this state, and
has never returned; nor has he ever since had any concern
in the business of said factory, although no formal or public
dissolution of said copartnership has been made. He has
since been declared a bankrupt, under the bankrupt law of
the *United States*, and all his rights and interests in said
works, have been vested in *William C. Sterling*.

When *Branch* became insolvent and absconded, he was
indebted to his copartners, or to the copartnership, in the
sum of 1345 dollars, 66 cents, which was nearly, if not the
full value of his interest in said factory, machines and tools.

On the 1st of *March*, 1841, *Schuyler Pratt, Henry Belcher,*
and *Horace Landon,* by deed of that date, conveyed all their
interest in the mortgaged premises to *William C. Sterling,
Albert Moore* and *Silas B. Moore,* who ever since have been,
and now are, the sole owners thereof, and have made im-
provements therein, and additions thereto, of considerable
value.

During most of the time while said copartnerships existed,
the plaintiff resided in the neighbourhood of said works, and,
at several times, transacted business with some or all of said
firms, and knew that *Branch* was a partner therein.

The interest on the several notes so secured by mortgage
as aforesaid, is indorsed upon said notes, as having been paid

thereon, up to the 9th of *March*, 1839; but 101 dollars, 24 cents, parcel of said interest, has been in no other manner paid, than by *Branch's* giving his note to the plaintiff for that sum; which note is still due and unpaid.

The case was reserved for the advice of this court as to what decree ought to be passed thereon.

*Church*, for the plaintiff, contended, 1. That if he was entitled to any decree in his favour, it should be for all that was due to him. In the first place, the defendants must pay both mortgages, or they will be foreclosed of their interest in both. *Phelps* v. *Ellsworth*, 3 *Day*, 397. 401. Secondly, they must also pay the interest due on one of the mortgage debts, for which *Branch* gave a new note, which remains unpaid. The giving of a new note is not payment of the debt. *Bolles* v. *Chauncey*, 8 *Conn. R.* 389.

2. That the property mortgaged to the plaintiff, on the 11th of *July*, 1837, never became partnership estate. *Branch* first owned it in severalty. He then sold an undivided moiety to *F. A. Sterling;* and they held it as tenants in common. It was never put into the partnership as stock; nor was it acquired with partnership funds; nor was there any agreement, from first to last, that it should be partnership stock. It never had any of the characteristics of such property. *Sigourney* v. *Munn*, 7 *Conn. R.* 11.

3. That under the description of "satinet factory" and "appurtenances," in the mortgage deed of *July*, 1837, the buildings, lands, and water privileges belonging to this manufacturing establishment, passed. *Co. Litt.* 4 *b.* 5 *b.* *Bodenham* v. *Pritchard*, 1 *B. & Cres.* 350. (8 *E. C. L.* 97.) *Allen* v. *Scott*, 21 *Pick.* 25. 29, 30. *Bacon* v. *Bowdoin*, 22 *Pick.* 401. 1 *Chitt. Gen. Pr.* 157, 8.

4. That the description of the note in the condition of the mortgage deed in question, is not essentially variant from the note produced in evidence. Aside from the word "penal" in the deed, there is not even a verbal difference; but this makes no difference in the construction or effect of the deed. The note is particularly described, by the date, amount, parties, time of payment and interest. This description identifies it beyond mistake. The "*penal* sum of 787 dollars and 39

cents," is nothing more nor less than the sum specified. The mortgage gives notice of every thing necessary to be known.

*T. Smith* and *Hubbard*, for the defendants, contended, 1. That if the plaintiff is entitled to any decree against them under the mortgage of *July*, 1837, it ought to be distinct from the decree which is conceded to him under the mortgage of the 9th of *March*, 1835. The defendants were entitled to redeem the latter, without redeeming the former. 4 *Kent's Com.* 175.

2. That the property described in the mortgage deed of the 11th of *July*, 1837, was partnership stock, and liable to all the incidents attending that description of property ; and *Branch* being in arrear to his copartners, his mortgage to the plaintiff must be postponed until his indebtedness to them is discharged. *Witter* v. *Richards*, 10 *Conn. R.* 37. *Brewster* v. *Hammet*, 4 *Conn. R.* 540. From the time the partnership between *Branch* and *F. A. Sterling* was formed, in *May*, 1836, this property was used and improved by them, in their partnership business ; and beyond this, *Branch* furnished very little, if any, capital for the business. Each intended to put in one half of the old establishment, as his share of the capital stock. Lands purchased to accommodate a copartnership concern, or put in as capital stock, whether conveyed to the firm, or to one partner, or even to a third person, are in equity partnership property. 1 *Mont. on Part.* 206. 3 *Kent's Com.* 36, 7. *Sigourney* v. *Munn*, 7 *Conn. R.* 11. 324. To enable the copartnership to prosecute the business, it became necessary for them to enlarge the works, to make additions thereto and alterations therein, and to purchase new and additional machines and implements ; all of which was done at the partnership expense. The property, consisting in part of real and in part of personal estate, has, throughout, been treated as partnership effects, and has been holden and transferred as if devoted to the copartnership business. And the plaintiff, when he took his mortgage, had at least constructive, if not actual, notice of the nature and condition of this property.

3. That the mortgage deed in question did not convey the *land :* it only described the factory as a superstructure. As a conveyance of land, the deed would be void for uncertain-

ty. The word "*appurtenances*" includes no part of the land. A thing appurtenant, is inferior to the principal thing, and less worthy. *Co. Litt.* 121. *b.*

4. That there is a variance between the note described in the condition of the mortgage and that set up in the bill and produced in evidence. The former is a *penal* note, and is, in fact and in legal intendment, different from the latter. The giving of the amount of the penalty, does not show what the mortgage debt is.

Church, J. It was once supposed, that, upon a bill to foreclose a mortgage, the title of the mortgagee would not be investigated; and that the parties, in such case, would be left to litigate that matter in an action at law. *Broome* v. *Beers*, 6 *Conn. R.* 198. *Palmer* v. *Mead*, 7 *Conn. R.* 149. It is not often, in proceedings of foreclosure, that the title of the mortgagee is directly put in issue, or constitutes the principal subject of controversy; although the entire purpose of the plaintiff, is, in default of payment, to make perfect a title, which before was qualified; and the ground of his application is, that he has a mortgage title; and without an averment of facts constituting such title, his bill would be defective. It may not be necessary either to allege or prove the precise condition of the title; whether it be in fee or in tail—for life or for years; but it seems to us, as the right of the plaintiff to ask the interference of the court, depends upon some title in himself to the land mortgaged, either legal or equitable, that it is incumbent upon him to establish it, at least *prima facie;* and of course, the defendant must have a corresponding right to attack it. A decree in favour of a party, without interest in the subject to be affected, would be useless; and to call upon a court of justice to act, in such a case, at a venture, would be trifling with judicial proceedings. The decision of this court, in the case of *Woodruff* v. *Cowles*, 8 *Conn. R.* 35., as we suppose, warrants us in these remarks, as well as in the expression of the opinion, that upon a process of foreclosure, the title of the mortgagee may become the subject of inquiry and decision. And although the judge who drew up the opinion of the court in that case, confines himself ostensibly to the question, whether usury could be proved in defence; yet it is obvious, that even that question involved

the principle we have now advanced, and that the court so understood and intended to consider it.

The defendants in this case, who claim under *Simon Branch*, the original mortgagor, and who was the owner of the whole premises, relying upon their right to look into the title of the plaintiff to the mortgaged property, now claim, that the premises which *Branch* pretended to mortgage to the plaintiff, by his deed of *July* 11th, 1837, and which now constitutes the only subject of controversy, was copartnership estate, when that deed was executed, belonging to the firm of *Landon, Branch & Co.*; and that *Branch*, being insolvent and indebted to the firm in a sum equal in value to the mortgaged estate, had in equity no interest in it, and had no right to mortgage it to secure a private debt of his own.

It appears from the finding of the committee, that *Branch* was the sole owner of the property; and that, on the 5th day of *May*, 1836, contemplating a copartnership connexion in manufacturing business with *Frederick A. Sterling*, he conveyed to him the one undivided half of the estate, for a consideration moving entirely from *Sterling*, in his individual capacity. And although a copartnership was then, or about that time, formed between them, and the property in question was subsequently improved for copartnership purposes; yet this circumstance did not change the state of their respective titles, nor the nature of their tenancy. The deed from *Branch* to *Sterling* constituted them tenants in common; and so they remained, notwithstanding the copartnership, and the improvement of the property for its use and accommodation.

If the property now in controversy was copartnership stock, when it was mortgaged by *Branch* to the plaintiff, and the plaintiff can be charged with notice of that fact; or if he was reasonably put upon inquiry regarding it; then the solvent partners have a lien upon it for the payment of debts due from the company, as well as for the balance due to the firm from *Branch* as copartner. *West v. Skip*, 1 *Ves.* 142. *Coll. on Part.* 65.

There is not entire harmony in the decisions regarding the nature of real estate, purchased and improved for partnership purposes, or with partnership funds. The later cases advance beyond the earlier ones in treating such property as personal estate, subject to the purposes and responsibilities of

*Litchfield,*
*June, 1844.*

Frink
*v.*
Branch.

the copartnership. But we suppose our law, so far as it is necessary for us to look into it, in the present case, was settled, by this court, in the case of *Sigourney* v. *Munn,* 7 *Conn. R.* 11. The doctrine of that case is, if real estate be acquired with partnership funds, for partnership purposes, or was originally put into the company as stock, by agreement, then it will be considered as partnership stock. The same principle has been recognized in more recent cases. *Frereday* v. *Wightwick,* 4 *Cond. Eng. Ch.* 317. *Philips* v. *Philips,* 7 *Id.* 208. *Broome* v. *Broome,* 9 *Id.* 118. *Randall* v. *Randall,* 10 *Id.* 52. *Crawshay* v. *Maule,* 1 *Swanst.* 495. *Edgar* v. *Donnally,* 2 *Munf.* 387. *McDermot* v. *Lawrance,* 7 *Serg. & Rawle,* 438. *Greene* v. *Greene,* 1 *Hammond,* 535. *Forde* v. *Herron,* 4 *Munf.* 316. *Coll. on Part.* 76. 3 *Kent's Com.* 15.

If the facts of this case be brought to the test of this principle, it will appear quite plain, we think, that the parties,—joint owners of this property when this mortgage was executed,—remained tenants in common of it, as of real estate. *Branch* was its sole owner, and had been, long before he contemplated any connexion in business with *F. A. Sterling. Sterling's* half of it was purchased with his own funds, and the deed was taken by him in his own name, and for his own use, and without any intimation, expressed in the deed or elsewhere, that any copartnership had been formed, or was in contemplation, between the parties to it. This property was not purchased with common funds; nor was any common capital withdrawn from the power of creditors to make the purchase; nor was there any agreement, that the property thus owned in common, should become partnership stock, or constitute any part of the capital of the company. It was agreed by parol only, that this property should be improved, by the company, in the prosecution of its business; but this agreement extended only to its temporary use. It did not, nor could it, affect the title to the land, even as between the parties, much less as the rights of others might be involved.

Subsequently to the purchase by *F. A. Sterling,* and before the execution of the plaintiff's mortgage, several other copartnerships were formed and dissolved, by which this property continued to be used, and of which *Branch* continued to be a member; and the conveyances of this estate by

*Litchfield,*
June, 1844.

Frink
*v.*
Branch.

retiring partners, all treated it as real estate holden in common. On the 14th of *June*, 1837, the copartnership, consisting of *Simon Branch* and others, under the name of *Landon, Branch & Co.*, was formed, by written articles, and was the same which existed when this mortgage was made. These articles refer to this property as real estate, owned by the parties in common, the said *Branch* owning one half, and the other partners the other half; and this was only one month before the execution of the mortgage, and probably after all the improvements and additions had been made to the factory, which are referred to in the report of the committee. During all this time, the legal title appeared truly upon the public records—a tenancy in common; and there was no agreement, either in or out of the articles of copartnership, that it should be otherwise considered. The plaintiff, in giving credit to *Branch*, acted upon the faith of the public records; and nothing had occurred to cause a suspicion that the equitable and legal title to the land mortgaged did not correspond; nor that *Branch* was insolvent, or was indebted to the company. It is true, that *Frink* resided near the factory, and was informed of the existence of the several copartnerships; but that he knew, or had any means of knowing, the state of their affairs, is not pretended. These facts fall far short of creating an equity in favour of these defendants, which should disturb the title of the plaintiff.

Reliance is placed upon the fact, that the several succeeding owners of this property made improvements upon it, and additions to it, from the avails of the partnership business. To what extent this was done, does not appear. But as we have suggested, nearly all, if not all, these improvements, were made before the existence of the copartnership of *June* 14th, 1837. And the written articles constituting that company, refer to this property as real estate, of which the respective copartners were tenants in common in the several proportions therein mentioned. And it does not appear, that any such improvements were made between the commencement of this copartnership and the execution of the plaintiff's mortgage. But if it was so, we do not see how this circumstance could operate to change the nature of the principal estate, to which these improvements were only incidental. They may have enhanced the value of the factory property; they could

*Litchfield,*
*June, 1844.*

*Frink*
*v.*
*Branch.*

not alter its character, as the defendants claim, nor affect the title.

Buildings, even if erected as permanent, under some circumstances, may be considered as personal estate; and they have been so treated. *Benedict* v. *Benedict,* 5 *Day,* 464. 20 *American Jurist,* 485. *Wells* v. *Banister,* 4 *Mass. R.* 514. *Doty* v. *Gorham* & al. 5 *Pick.* 487. But the law generally, and with but few excepted cases, treats lands and fixed buildings as real estate. Our statute prescribing the essential qualities of deeds of conveyance, makes no difference between them. The common law has always regarded them as identical. "*Terra,* land," says Lord *Coke,* "legally includeth all castles, houses and other buildings; for castles, houses, &c. consist upon two things, *viz.* land or ground, as the foundation, or [and the] structure thereupon; so as passing the land or ground, the structure or building thereupon passeth therewith." *Co. Litt.* 4 *a.*

This mortgage deed clearly conveyed the factory as real estate, as no severance was contemplated. The privileges and appurtenances, by the terms of the deed, as well as by necessary intendment, passed with it; and these, if nothing more, were privileges of water, the right of passage, &c.

But the defendants now insist, if the factory or building described in the plaintiff's mortgage, is to be here considered as real estate, and as parcel of the land upon which it stands, and of which *Branch* and others were tenants in common, that the mortgage deed from *Branch* to the plaintiff, conveyed no title, but is void; because it purported to convey an undivided interest in a distinct and separate part of a larger parcel thus held in common. *Mitchell* v. *Hazen,* 4 *Conn. R.* 495.

The report states, that the property owned in common, by *Branch* and *F. A. Sterling,* was the factory in question, the land on which it stands, together with tools, water privileges, &c., and also some land adjoining the same, as described in the deed from *Branch* to *Sterling.* By reference to this deed, it will be seen, that there is a small piece of land connected with the factory and water privilege,—the same which was formerly occupied by *Branch,* in connexion with his clothing works. The precise quantity can only be determined by calculation.

That the mortgage deed conveyed the interest of *Branch*, not only in the factory building, but also in the land on which it stands, as well as the water privileges appurtenant, we think, is certain. *Dutton* v. *Tracy*, 4 *Conn. R.* 80. *Wetmore* v. *White*, 2 *Caines' Ca. Err.* 87. *Allen* v. *Scott*, 21 *Pick.* 25. *Bacon* v. *Bowdoin*, 22 *Pick.* 401. So also, we think, the adjoining land, or some part of it, may have passed by the deed ; but to what extent, the whole parcel, or only a part of it, the facts stated in the report do not enable us to determine. If the interest of *Branch* in the entire parcel was conveyed, then this objection fails. And whether it was so conveyed, and passed, by virtue of the deed, to the plaintiff, must depend upon its extent, the purposes for which it was used, and other circumstances, of which we are not informed. The property described in the deed is, "the one half of a satinet factory, together with the one half of all the machinery and other appurtenances thereunto belonging." The *habendum* is in the usual form of warranty deeds, "with the appurtenances thereof," &c. By the ordinary use of the word *appurtenances* in the *habendum*, land will not pass as an appurtenant to land ; yet technical or other language is often used and understood in an enlarged sense beyond its technical or ordinary use. A question of construction or intention, then, arises. Lord *Coke* says, that by the grant of a messuage or house, the curtilage, garden and orchard do pass, though not land at a distance. And so an acre or more may pass, by the name of a house. *Co. Litt.* 215. *b.* note 35. A distinction between the word *messuage* and the word *house*, was, in one case, recognized. *Keilway* 57. But this was not followed afterwards. And in *Doe* d. *Clements* v. *Roberts*, 2 *Term R.* 498, *Ashhurst*, J. says, "the distinction between messuage and house is too subtle to be relied on, at this time. What will pass by the one, will pass by the other." And in that case, it was determined, that a bequest of "the house and garden I live in," carried to the devisee the stables and coal-pen occupied together with the house, all being in one enclosure. In *Higham* v. *Baker*, *Cro. Eliz.* 16. it was said, by *Anderson*, Ch. J., that "land shall pass as pertaining to a house, which hath been occupied with it, by the space of ten or twelve years ; for by that time, it hath gained the name of *parcel* or *belonging ;* and shall pass with the house by that

*Litchfield,*
June, 1844.

Frink
*v.*
Branch.

name, by will or deed." In *Smith* v. *Martin,* 2 *Wms. Saund.* 400. it was holden, that a garden may be said to be parcel of the house, and will pass by that name. *Vide* notes to the case. So in the case of *Buck* v. *Norton,* 1 *Bos. & Pull.* 53. it was decided, that though lands will not pass under the word *appurtenances,* taken in its strict technical sense, yet they will pass, if it appears that a larger sense was intended to be given to it. And Mr. *Chitty* says, it has been holden, that under a devise of a messuage with appurtenances, not only the house passes, but also land occupied with the same, and highly convenient for the use of it. 1 *Chitty's Gen. Pr.* 158. *Plowd.* 171. 3 *Leon.* 214. *Litt. Rep.* 6. *Hearne* v. *Allen, Cro. Car.* 57. *Hutton,* 55. *Shep. Touch.* 94. *Gulliver* v. *Poyntz,* 3 *Wilson,* 141. 2 *Bla. Rep.* 726. 1148. 21 *Pick.* 30. 22 *Id.* 400. 3 *Mason,* 280.

In view of this evidence of the common law, we are of opinion, that other land, more than that covered by the building, passed by the mortgage in question. The factory was appropriated to the manufacture of satinet cloths, with a privilege of water appurtenant, as well as rights of way, and to which the improvement of adjacent land, to some extent, was a necessary incident. But whether the whole parcel described in the deed from *Branch* to *Sterling,* had been used with the factory, or was necessary, or convenient for its use, we cannot determine from the facts before us, and therefore cannot determine whether this deed falls within this objection of the defendants. We cannot tell whether *Branch* mortgaged to the plaintiff a part of a larger parcel holden in common, or the whole of it.

Another objection taken to the validity of the plaintiff's mortgage, is, that the condition does not, with reasonable certainty, give the amount of the debt now claimed by the plaintiff, to be secured by it : that the condition describes a *penal note ;* whereas the note produced is one without penalty. If the scrivener intended to use the words " *penal sum,*" in the sense commonly conveyed, when a condition is attached to an obligation ; yet, as the whole sum of the penalty may be due, and third persons are put upon reasonable enquiry, there is nothing in this objection. *Crane* v. *Deming,* 7 *Conn. R.* 387. *Booth* v. *Barnum,* 9 *Conn. R.* 285. *North* v. *Belden,* 13 *Conn. R.* 376. *Chester* v. *Wheelwright,* 15 *Conn. R.*

562. A penalty is intended to enforce the performance of a condition, or some collateral act; but as none such is here referred to, we can understand these words as mere expletives, or as intended to render the language more emphatical.

We believe, upon the facts disclosed by the report, the plaintiff is entitled to a decree in his favour; but questions are made regarding the amount to be paid, by the defendants, upon redemption. The interest upon the note secured by the last mortgage, is indorsed upon it, as having been paid up to the 9th day of *March,* 1839; but the report discloses the fact, that this interest was in no other way paid, than by giving a new note for it, which new note has not been paid. The substitution of one simple contract for another, is not a payment: the same debt continues in a different form. The interest upon this note, therefore, has never been paid. The plaintiff is justly entitled to it; and no reason exists why it should not be paid, by the defendants, who are subsequent incumbrancers. They have not been misled; no false lights have been held out; the public record informed them that this mortgage was given to secure the actual payment of the note and the interest. The case of *Bolles* v. *Chauncey,* 8 *Conn. R.* 390. is conclusive upon this point. The decree, therefore, must be made up as if no such indorsement of interest had been made.

The bill calls for the payment or foreclosure of two mortgages, made by *Branch* to the plaintiff, of separate parcels of land; one executed on the 9th day of *March,* 1835, to secure a note of thirteen hundred dollars, and the other to secure the note of seven hundred and eighty-seven dollars, and thirty-nine cents. The plaintiff claims an entire decree; so that the defendants shall be foreclosed of all right to redeem either mortgage, upon failure to pay both. And in support of this claim, he refers us to the doctrine of the case of *Phelps* v. *Ellsworth,* 3 *Day,* 397. That case was treated as if it had been between the original parties to the mortgage; and we notice another distinction between that case and the present: there, the land first mortgaged was included in the second mortgage deed, showing, as the plaintiffs claimed, that the whole land should stand as security for both debts. Without intending now to review the doctrine of that case, we think the distinctions we have noticed, warrant

us in the opinion, that the principle there recognized will not apply here, against such of the defendants at least, as are subsequent incumbrancers, who are, in our judgment, entitled to redeem one of these mortgages, without the other.

We shall advise the superior court in conformity with the views expressed in this opinion.

The other Judges concurred.

Modified decree for plaintiff.