### ANDREW J. PECK vs. THOMAS LOYD.

A deed of partition of lands owned by tenants in common granted to each tenant, his heirs and assigns, a right of way over the land of each of the others, and a portion of such land was afterwards conveyed to the plaintiff by deed, "with the appurtenances." A part of the lands so divided was conveyed to the defendant through a chain of conveyances, of which those to the defendant's immediate grantors granted the land subject to a right of way in the plaintiff. It further appeared that for fifty years, and down to the time when the defendant's grantor owned the land, there was a defined way from the land of the plaintiff over the defendant's land, which had been used by the owners and occupiers of the plaintiff's land as occasion required.

Held, that by the deed of partition, the conveyance to the plaintiff and the facts in the case, a right of way was created over the land of the defendant as appurtenant to the plaintiff's land.

The plaintiff gave permission to D., who owned a portion of the land over which the right of way extended, lying between the plaintiff's and defendant's land, to build a house on his land across the located way, so that after the house was constructed it was necessary for the plaintiff, in the use of his way, in order to pass by the house, to diverge from the located way, which D. permitted him to do. The plaintiff further gave permission to D. to erect a stone fence across the located way in the division line between D.'s land and the land of the defendant, leaving a bar-way for the plaintiff to pass through a few feet outside of the located way. Before the conveyance to the plaintiff, S. who owned a portion of the land covered by the right of way, obstructed the way over his land, and opened a new way in place of the old one, without objection from the plaintiff's grantor, and which was satisfactory to him.

In an action against the defendant for obstructing the way over his land, it was held that the licenses from the plaintiff to D. constituted no abandonment of the way by the plaintiff; that it was no defence to the action that the plaintiff could not enter the defendant's land through the bar-way without committing a technical trespass to the defendant's land, and no defence, further than it affected the question of damages, that the plaintiff was unable to use the way on account of the difficulty of entering the defendant's land ; and that the acts of S. constituted no abandonment of the way over the defendant's land, and furnished no justification or mitigation of the wrongs committed by the defendant.

TRESPASS ON THE CASE for obstructing a way; brought to the Court of Common Pleas, and tried on the general issue closed to the court, before *Brewster, J.*

The way in question was a located and established cart-path or drift-way, suitable for the travel and passage of animals

and vehicles at all times of the year, running southerly from the plaintiff's land across the land of D. C. Downes, immediately north of and adjoining the land of the defendant, thence through the defendant's land to land of W. R. Smith, thence through Smith's land to a road known as the Quaker Ridge road.

The land owned by the plaintiff and defendant belonged originally to the estate of Nathaniel Sackett, and each of the parties derives title through a long line of conveyances from the heirs of that estate. The lands of the estate were in 1769, by deed of partition, divided among the heirs in strips running through the estate from east to west, and the deed of partition granted to each of the heirs, their heirs and assigns, a right of way across the land of the other heirs to the highway on the south. Each deed in the plaintiff's line of conveyance conveyed the land " with the appurtenances thereof," and six of the deeds in the defendant's line of conveyance, including the last three, granted the land subject to the plaintiff's right of way.

In 1796, Israel Peck, one of the plaintiff's grantors, was the owner of land lying between the premises formerly owned by Sackett and abutting thereon, and Quaker Ridge road, lying to the eastward and northward of the *locus in quo*, abutting also on said road, and prior to 1850 the way as located ran across rough pasture land through a tangled mass of briers and a swamp southerly to said road, and was used by him mainly for carting wood in winter, and occasionally for transporting farm produce. During the twenty years immediately preceding the commencement of this suit, the way had been used only occasionally for the purpose above mentioned ; no obstruction except an old fence (through a gap in which the located way passed, the same being the southern boundary of the defendant's land,) existed prior to 1850 between land of the plaintiff's grantors and a gate opening on Quaker Ridge road.

Between the years 1850 and 1853, William R. Smith, without objection from the plaintiff's grantors, ditched with blind or covered ditches, and cleared and ploughed across that portion

of the way lying between the land now owned by the defend-
ant and said road, he then owning that which is now owned
by the defendant as well as that lying to the south of it, and
also built stone fences across the same, leaving bar-ways in
the way which the plaintiff has used, and also other bar-ways,
by means of which a direct and practicable passage way was
had other than by the located way, and placed the land under
cultivation, and entirely changed the condition of it. In ad-
dition to such acts he partially closed the gap in the old fence.

The defendant ploughed up the whole of the premises owned
by him, and through which the way passed, and ploughed up
the way, and so continued to do after he had been warned and
notified not to plough or injure the way, and placed a large
stone in the bar-way through which the way passed, the bar-
ways being in the defendant's fence, and continued the same
until the bringing of this suit, and continued other stones and
obstructions which had been placed in the way on his prem-
ises by others. The defendant, when he was notified that he
was ploughing up the plaintiff's way and was forbidden by
the plaintiff so to do, defied the plaintiff, and denied his right
of passage across and over his land by the drift-way in ques-
tion. This denial, defiance and ploughing up of the plain-
tiff's way occurred subsequent to the time when the plaintiff
gave the license to D. C. Downes hereinafter mentioned. The
only obstructions placed upon, or injury done to, the way by
the defendant were those above stated, and although the
plaintiff forbade the ploughing up of the cart-path or drift-
way by the defendant, he did not at any time designate the
line of the way, or locate it for the defendant, although re-
quested to do so. After the defendant became owner of his
land, the plaintiff had had no occasion to use the way in that
part of it running over the defendant's land, nor was he pre-
vented from using it other than by the ploughing and the con-
tinuance of the previous obstructions above referred to.

It appeared from the testimony of aged witnesses, formerly
residents in that neighborhood, that, fifty or sixty years be-
fore the land was conveyed to the defendant, occupants of the
land now owned by the plaintiff had drawn wood and grain

over the drift-way, and that up to the time the land over which the drift-way runs was owned by Smith, there had been, as far back as they could remember, an ancient, well defined and well known cart-path from the land of the plaintiff to Quaker Ridge road.

With the consent and license of the plaintiff, Downes, in 1870, just prior to the commencement of this suit, built a house on Downes' land across the way as located, so that, in order to pass over the way upon reaching Downes' house, it was necessary to pass a few feet to the eastward of and leave the located road. Downes' land was immediately north of the defendant's land; and thereafter, with the plaintiff's permission, Downes built a division fence between his land and the defendant's land, across the located way, leaving a bar-way through which the plaintiff might pass a few feet east of the located way, so that there was no entrance by bars or gate to the defendant's land from the north, except through the bars left by Downes for that purpose.

The court rendered judgment for the plaintiff, and the defendant moved for a new trial for error in the rulings of the court.

*Child* and *Fessenden*, in support of the motion.

*Olmstead*, contra.

PARK, J. We think it clearly appears from the motion for a new trial that the plaintiff has a right of way over the defendant's land, originating in the deed of partition of the estate of Nathaniel Sackett among his heirs in 1769. The lands now owned by the plaintiff and the defendant were originally parts of that estate, and each of the parties has come into the possession and ownership of the land through a long line of conveyances from the heirs of that estate. The estate was divided among the heirs in strips of land running through the estate from east to west, and the deed of partition gave each of the heirs, his heirs and assigns, a right of way over

the lands of the other heirs of the estate to a highway on the south.

The right of way was therefore made appurtenant to each of the pieces of land, and each deed in the plaintiff's line of conveyance conveyed the land with the appurtenances thereof, which was sufficient of itself to convey the right of way, together with the land, to each of the grantees, and finally to the plaintiff. *Frink* v. *Branch*, 16 Conn., 260 ; *Smith* v. *Moodus Water Power Co.*, 35 id., 392 ; *Post* v. *Smith*, id., 561 ; *Strong* v. *Benedict*, 5 id., 219.

Six of the deeds in the defendant's line of conveyance from the estate of Nathaniel Sackett grant the land subject to the plaintiff's right of way over the land. The last three deeds are of this description, thereby showing that the defendant's immediate grantors acknowledged while they were the owners of the defendant's land that the land was under the servitude of the plaintiff's right of way, and conveyed the land subject thereto. In addition to these facts, the court finds from parol evidence that down to the time the defendant's grantor owned the land now owned by the defendant, there was a regular defined way, as appears by the plaintiff's map of the premises, from the land now owned by the plaintiff over the defendant's land to the highway on the south, which had been used by the owners and occupiers of the plaintiff's land from the earliest recollection of aged witnesses, as occasion required.

We think these facts clearly establish a right of way appurtenant to the plaintiff's land over the land of the defendant, unless the way has been abandoned within a few years.

The defendant claimed on the trial in the court below, and offered parol evidence to prove, that the two immediate grantors of the defendant, when they deeded the land subject to the plaintiff's right of way, did so through the mistake of the scrivener, but the court rejected the evidence, and we think correctly. 1 Greenl. Ev., secs. 275, 6, 7.

It further appears in the case that one Downes owns a tract of land, derived from the estate of Nathaniel Sackett, over which the plaintiff's right of way extends. The land lies south of the plaintiff's land, and joins the defendant's land

on the north. Just previous to the commencement of this suit the plaintiff gave permission to Downes to build a house on his (Downes) land across the located way on the land, so that after the building was constructed it was necessary for the plaintiff, in the use of his way, to pass by the house a few feet farther to the east than the located way, which Downes agreed the plaintiff might do. About the same time the plaintiff gave further permission to Downes to build a stone fence across the located way, in the division line between Downes' land and the land of the defendant, leaving a barway through which the plaintiff might pass a few feet east of the located way, so that after the fence was constructed there was no entrance for the plaintiff to the defendant's land from the north except through the bar-way, which was made for the plaintiff's use.

The defendant claimed as matter of law that these licenses given by the plaintiff to Downes precluded the plaintiff's recovery in this suit against the defendant for obstructing the plaintiff's right of way on the defendant's land. It is difficult to see what foundation there is for this claim. These licenses show no intention in the plaintiff to abandon the way, but on the contrary they show an intention to continue the use of the way, the same after the licenses were given as before; for the plaintiff required that Downes should provide a way by the building and through the division fence in consideration of the licenses.

Neither is it any defence in this case that the plaintiff could not enter the defendant's premises through the bar-way provided by Downes for the plaintiff's use, without committing a technical trespass to the defendant's land. It would be remarkable indeed if the plaintiff's right of way existing by deed should be destroyed, because the plaintiff, through the merest accommodation to Downes, allowed him to perform an act which resulted in rendering the plaintiff unable for the time being to enjoy the way, without committing a technical trespass to the rights of some one along the line. Rights existing by deeds are not held by such feeble terms. The rights exist whether they can be enjoyed *in presenti* or not, owing to

some unforeseen occurrence, or the allowance of some act like the present one. The plaintiff did not put it out of his power forever to remove the technical difficulty. To accommodate Downes he permitted him to build a stone fence across the located way, thinking, no doubt, the defendant would make no objection if the entrance to his premises was removed a few feet. We cannot say as matter of law that the fence across the way was a permanent obstruction simply because it was a stone fence. It may have been put there for a temporary purpose merely. For aught that appears the plaintiff can withdraw his license at any time, and require Downes to remove the difficulty. And furthermore, even if the plaintiff has deprived himself of the right to require Downes to remove the fence, because the license being executed has become irrevocable, the plaintiff may buy of Downes the right to remove the fence, and the difficulty will then be removed. Neither is it any defence to this action, further than as affecting the amount of damages to be recovered, that during the time covered by the plaintiff's declaration he was unable to use the way on account of the technical difficulty of entering upon the defendant's land. The acts committed by the defendant in plowing up and obstructing the plaintiff's way over the defendant's land were done under a claim of right, which if continued uninterruptedly for the space of fifteen years would ripen into a right, and destroy the plaintiff's right of way. The hazard in which the plaintiff's right is placed by such injurious acts presents a case of substantial damage, and renders it eminently just and proper and necessary that an action should be sustained, in order that the right may be vindicated, and its existence be preserved. The law upon this subject is well settled. *Parker* v. *Griswold*, 17 Conn., 288; *Branch* v. *Doane*, 18 id., 242; *Bower* v. *Hill*, 1 Bing. N. C., 549.

We see nothing in the acts of Smith upon his land lying south of the defendant's land, in regard to the plaintiff's right of way upon his land, that constitutes a defence to this action. The acts were done without objection from the plaintiff's grantor, who then owned the land now belonging to

Peck *v.* Loyd.

the plaintiff, and it seems that the provision made by Smith of a new way in the place of the old one upon his land was satisfactory to the plaintiff's grantor. These acts constitute no abandonment of the way upon the defendant's land. The way was used long afterwards. Neither do they furnish any justification or mitigation of the wrong committed by the defendant.

We do not advise a new trial.

In this opinion the other judges concurred.