WINTHROP DEWOLF, RECEIVER, vs. THE A. & W. SPRAGUE MANUFACTURING COMPANY AND ANOTHER.

The plaintiff held a judgment lien upon certain real estate of which a trust mortgage had been made which, if valid, had priority, and brought a suit for the setting aside or postponing of the mortgage as void against him, for a foreclosure of the judgment lien, and for possession, making the mortgagors and the trust mortgagee defendants. Held that the bill was not multifarious.

And held no objection that the trustee under the mortgage claimed adversely to the plaintiff, inasmuch as it was a part of the plaintiff's case that the mortgage should be postponed to the judgment lien, thus making the trustee a party to be foreclosed.

And the Practice Act (sec. 12,) expressly authorizes the making of any person a defendant who claims an interest adverse to the plaintiff or whom it is necessary to bring in for a complete determination of any matters involved in the suit.

A deed was executed on the first of November, 1873, to a trustee, by the Sprague Manufacturing Company, A. & W. Sprague as partners, and A., W., M. and F. Sprague as individuals, purporting to convey all the property of all the grantors in various states, consisting mainly of mills, that lying within this state being described as follows: " all the property which the parties of the first part have in the following towns in the state of Connecticut, viz:" (naming four towns.) It stated the fact that the Sprague Manufacturing Co. and A. and W. Sprague as partners and as individuals were indebted to the amount of about fourteen millions of dollars, which indebtedness they desired to fund, and that for this purpose the Sprague Manufacturing Co. had made a large number of notes, indorsed by A. & W. Sprague, amounting in the aggregate to that sum, payable three years from January 1st, 1874, with semi-annual interest, to be used by the trustee in retiring such of the indebtedness referred to as the holders of it should within nine months surrender or agree to extend for the term of the notes; and provided that the Sprague Manufacturing Co. should remain in possession and continue the business at the mills, with power in the trustee to take possession and run the mills

DeWolf *v.* Sprague Manufacturing Co.

at the expense of the estate; that the deed should become void if the notes were paid; that in default of payment of principal or interest the trustee might sell the property, and should do so upon the written request of one fifth in amount of the holders of the notes, and apply the proceeds, after paying the expenses of the trust and of carrying on the business, ratably to the payment of the notes that had been issued and of all claims that had been brought in and were still outstanding, and that he should account for any surplus to the grantors.  Held—

1.  That the deed was a trust deed in the nature of a mortgage, and not an assignment.          .          .

2.  That the description of the property was insufficient in a mortgage.

3.  That the conveyance was fraudulent and void against non-assenting creditors of the Sprague Manufacturing Company.

The Sprague Manufacturing Company, being insolvent, had no right, legal or moral, to pledge its property for the payment or security of any other debts than its own.

And the power given the trustee to run the mills at the expense of the estate, was a wrong to the non-assenting creditors, inasmuch as, if profits should accrue, they would go to the assenting creditors, while losses would diminish the value of the only interest to which the non-assenting creditors could resort.

The Sprague Manufacturing Co., a few months later, made a general assignment to the same trustee, for the benefit, first, of their creditors who had accepted the provisions of the trust mortgage or should do so within the time limited by it, and, secondly, of all their creditors ratably; with power in the trustee to run the mills, without personal liability for expenses or losses.  Held to be fraudulent and void against non-assenting creditors.

No debtor has a right to postpone or put in peril the rights of his creditors without their consent, and a conveyance which attempts so to do, or which is executed for the purpose of depriving creditors of their right to enforce their just claims against the property of their debtor by placing it beyond their reach for an unlimited or uncertain period, is in conscience as well as law fraudulent.          .

The cases where, in an assignment in trust for the benefit of creditors, a trustee may legally be authorized to continue the business of the assignor, are those in which the carrying on of the business is merely ancillary to the winding up of the debtor's affairs and with a view of more effectually promoting the interests of the creditors.  Where the authority is given chiefly for the benefit of the debtor, or where it is intended to hinder and delay creditors for an unreasonable period in the collection of their debts, it renders the deed fraudulent and void.

The diligence of a provident man is the measure of a trustee's duty, and a provision in a deed of assignment which exempts the trustee from that degree of liability, or in any way restricts it to a less degree than that which the law imposes upon trustees, renders the assignment void.

CIVIL SUIT to foreclose a judgment lien, to set aside or

postpone a trust mortgage and assignment in insolvency previously executed, and for possession of the premises covered by the lien; brought to the Superior Court in New London County. The plaintiff sued as receiver of the Franklin Institution for Savings, of Providence, in the state of Rhode Island, and the defendants were the A. & W. Sprague Manufacturing Company, a joint stock corporation of that state, and Zechariah Chaffee of Providence, trustee under the trust mortgage and assignee under the assignment.

The complaint alleged that the plaintiff recovered a judgment in the Superior Court for New London County, at its June term, 1880, against the A. & W. Sprague Manufacturing Company for $902,693.25, and that he caused a certificate thereof to be filed on the 15th day of June, 1880, in the land records of the town of Sprague in this state, where the real estate lay, which he had attached in the suit on the 18th day of October, 1879, the real estate being fully described in the certificate and in the complaint. The complaint then proceeded to allege that the A. & W. Sprague Manufacturing Company, A. & W. Sprague as partners, and Amasa Sprague, William Sprague, Mary Sprague and Fanny Sprague, on the 1st day of November, 1873, executed to the defendant Chaffee a trust deed purporting to convey to him as trustee the lands described in the certificate, which deed was recorded in the land records of the town of Sprague on the 2d day of December, 1873; and that on the 6th day of April, 1874, the A. & W. Sprague Manufacturing Company made a general assignment for the benefit of its creditors to the same trustee, which was the same day recorded in the land records of said town; both of which conveyances the plaintiff averred to be fraudulent and void against him as a creditor of the company, and the trust deed as also invalid as a mortgage for not sufficiently describing the property. The complaint prayed for a foreclosure of the judgment lien, that the trust deed and assignment be set aside or postponed to his judgment lien, and that possession be given him of the real

estate covered by the lien. The trust deed is fully set out and the assignment particularly described in the opinion of the court.

The defendants demurred to the complaint, specially, on the ground that it was bad for multifariousness and misjoinder of parties, and, generally, on the ground that the plaintiff was not entitled to the relief which he sought against the trust deed and assignment as fraudulent and void, or against the former as not sufficiently describing the property.

The case was reserved for the advice of this court.

*C. E. Perkins*, in support of the demurrer.

*First.* The complaint is bad for multifariousness.

1. In improperly joining distinct and independent matters in which some of the defendants had no interest. Multifariousness is defined in Story's Eq. Pl. § 271, as "the improperly joining in one bill distinct and independent matters, and thereby confounding them, as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." And in § 530 the author says, "What is more familiarly known by multifariousness as applied to a bill is, where a party is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever." These definitions are taken almost verbatim from the opinion of Lord COTTENHAM, in *Campbell* v. *Mackey*, 1 Mylne & Craig, 617. This rule has been repeatedly recognized by the courts of this state, and in *Jerome* v. *Jerome*, 5 Conn., 352, was applied to the case of a bill for the perpetuation of testimony and for equitable relief in the matter to which the testimony related. HOSMER, C. J., in giving the opinion of the court, says :—" That the bill is not legally sustainable cannot be questioned, as it unites distinct subjects which cannot be joined in the same application. It is a bill for the perpetuation of testimony and for relief. These subjects

are perfectly distinct in their features, in the grounds upon which they may be sustained, and in their final causes, and it is an unquestionable rule that they cannot be united in the same bill." See also *Coe* v. *Turner*, 5 Conn., 86. In *White* v. *Curtis*, 2 Gray, 467, the court say, as a reason why a bill was multifarious :—" Distinct and unconnected matters are united in it. It alleges two independent causes of action in which all the plaintiffs have not a common interest." In this case the Sprague Manufacturing Company were the owners of the equity of redemption, and of course were a proper party to be made defendant; but Chaffee, the trustee under the trust mortgage, had no common interest with them. The attempt of the plaintiff to set aside the trust deed was something entirely foreign to the foreclosure. Chaffee had no interest in the foreclosure.

2. But aside from the question whether Chaffee could be made a defendant, when having no interest in the foreclosure, there is a further and decisive objection to his being brought in, on the ground that he is an adverse claimant of the property. He does not hold subject to the plaintiff in any way, but in direct antagonism to him. In 2 Jones on Mortgages, § 1,440, it is said :—" Adverse claimants cannot be made parties to a foreclosure suit for the purpose of litigating their titles. The only proper parties are the mortgagor and mortgagee, and those who have acquired any interests from them subsequently to the mortgage. An adverse claimant is a stranger to the mortgage and the estate. His interests can be in no way affected by the suit, and he has no interest in it. There being no privity between him and the mortgagee the latter cannot make him a party defendant for the purpose of trying his adverse claim in the foreclosure suit. A bill which makes defendants persons who claim title adversely for the purpose of litigating and settling their rights, *is bad for misjoinder and multifariousness.*" In 1877 this question arose in *Dial* v. *Reynolds*, 96 U. States R., 340. That was a petition to foreclose a deed of trust, to quiet the title of the trustee, and to remove a cloud upon the title caused by a claim of

one Reynolds. The court says:—"It is well settled that in a foreclosure proceeding the complainant cannot make a person who claims adversely to both the mortgagor and mortgagee a party, and litigate and settle his rights in that case. This case was one of fatal misjoinder and multifariousness, and the proper course for Reynolds was to demur." In *Eagle Fire Co.* v. *Lent*, 6 Paige, 635, Chancellor WALWORTH says:—"The mortgagee has no right to make one who claims adversely to the title of the mortgagor and prior to the mortgage a party defendant for the purpose of trying the validity of his adverse claim of title in this court. The case is analogous in principle to making one who claims adversely to the vendor a party to a bill filed by the vendee for the specific performance of the contract of sale; in which case it is held that such adverse claimant cannot be made a party for the purpose of having the validity of his claim settled by a decree of this court which shall thereafter be binding upon him in relation to his claim of title." *Banks* v. *Walker*, 2 Sandf. Ch., 344, was a petition to foreclose a mortgage, and the mortgagor set up that a third person claimed the property, and that he should be made a party so as to dispose of all questions in the case. The court says:—"The defendant insists too that the complainants ought to have made the claimant a party to this suit, so as to have settled all the questions in controversy. This is an error. The bill would have been multifarious if it had brought in as a party one claiming the title in hostility to both the mortgagor and mortgagee." *Darcey* v. *Lake*, 46 Miss., 109, is exactly in point. It was a bill to foreclose a mortgage, and also making defendants persons to whom it was alleged the mortgagor had made a conveyance which was fraudulent as against the creditors of the mortgagor, of whom the mortgagee was one. The court held the bill to be multifarious. *Bogey* v. *Shute*, 4 Jones Eq., 174, was also a case of a petition to foreclose a mortgage, and asking that a deed given by the mortgagor prior to the mortgage be set aside as fraudulent as against the mortgagee, but the court held the bill to be bad as to him. The court, remarking

that the petitioner came into court to have his mortgage foreclosed, proceeds as follows:—" Thus far the bill was a proper one. But finding, as he says, that the other defendant was also claiming the land as the legal owner in fee, under a deed from the mortgagor prior in date to the mortgage, the plaintiff alleges that deed to be fraudulent and void as against the creditors of the maker of it, and against himself as mortgagee." This, the court says, cannot be done. In *Summers* v. *Bromley*, 28 Mich., 127, the court says:—" In the first place, it is not competent in a foreclosure suit, whatever the pleadings, to proceed and litigate the rights of a party who sets up a legal title which, if valid, is adverse and paramount to the title of both mortgagor and mortgagee;" citing many authorities. In *Banning* v. *Bradford*, 21 Minn., 308, there is a very full discussion of this subject, citing many authorities, and holding such a bill to be multifarious, and holding that if the mortgagee desires to attack a title prior to his he must foreclose his mortgage first and then attack it. See also *Lange* v. *Jones*, 5 Leigh, 192; *Holcomb* v. *Holcomb*, 2 Barb., 20; *San Francisco* v. *Lawton*, 18 Cal., 465; *Corning* v. *Smith*, 6 N. York, 82; *Lewis* v. *Smith*, 9 id., 502; *Frost* v. *Koon*, 30 id., 428; *Merchants Bank* v. *Thompson*, 55 id., 7; *Admrs. of Lyman* v. *Little*, 15 Verm., 576; *Sawyer* v. *Noble*, 55 Maine, 227; *Cheely's Admr.* v. *Wells*, 33 Misso., 106; *Haines* v. *Carpenter*, 1 Woods, 262; *Whitten* v. *Whitten*, 36 N. Hamp., 326; *Whaley* v. *Dawson*, 2 Sch. & Lef., 366; *Salvidge* v. *Hyde*, Jacob, 151; *Mole* v. *Smith*, id., 490; *Pearse* v. *Hewitt*, 7 Simons, 471; 1 Daniel's Ch., Pl., 346.

*Second.* There is no equitable reason for setting aside the trust mortgage and assignment as fraudulent, or as void on any of the grounds stated in the complaint.

1. It is claimed that the trust deed does not sufficiently describe the real estate which it purports to convey. But this constitutes no reason for the interference of a court of equity. If the deed is void for that reason it is void at law, and the plaintiff has full remedy in a court of law. This court denied equitable relief in precisely such a case in *Munson* v. *Munson*, 28 Conn., 582.

2.   The fact that the trust mortgage gave a preference to certain creditors does not render it fraudulent.   Bump on Fraudulent Conveyances, p. 397, says:—" The mere fact that the preference defeats all other creditors does not affect the validity of the assignment.   Every conveyance by which an insolvent debtor conveys his whole property to a few preferred creditors, not more than sufficient to pay their debts, necessarily tends to delay and defeat all other creditors; but however strong the intention is thereby to defeat or delay the latter, still the conveyance is not void on that account."   See also *De Forest* v. *Bacon*, 2 Conn., 637; *Bates* v. *Coe*, 10 id., 295.   The deed is a mortgage, made to secure such creditors as are willing to grant an extension of time for the payment of their claims and take new notes.   There can be no question but that a debtor may give a new note to one of his creditors and secure it by a mortgage, and so to any number of his creditors.   In this case, in consequence of the large number of creditors, the mortgage was given to one person as trustee for whoever should hold the notes.   It is like a mortgage to a trustee to secure any persons who might be the holders of a large issue of bonds. It leaves an equity of redemption in the grantors, which any creditor could attach and hold, subject to the rights of those who accepted the new notes.   It therefore no more placed the property beyond the reach of other creditors, or hindered or delayed them, than any other mortgage would do.

3.   A mortgage of real estate for the benefit of certain creditors is not void because the grantors are to retain possession of the premises and carry on business there.   Nor would it be avoided by a provision that if the trustee took possession of the premises for default of the grantors, he might carry on the business so long as was necessary.   Such a provision has repeatedly been held valid in this and other states.   *De Forest* v. *Bacon*, 2 Conn., 633; *Kendall* v. *New England Carpet Co.*, 13 id., 383; *Mitchell* v. *Winslow*, 2 Story, 644; *Brett* v. *Carter*, 2 Lowell, 459; *Foster* v. *Saco Manufacturing Co.*, 12 Pick., 451; Bump on Fraud. Con.,

402. The only provision that the trustee should carry on the business is, that he should have the power to take possession at any time, and either sell the property or continue to run the mills, as was for the best interest of the creditors. It would be strange if such a provision should be held to be a fraud upon creditors.

4. It is no objection that after the payment of the expenses of the trust and of the claims of the creditors who should accept the new notes, the surplus, if any, is to be returned to the mortgagors. The law always gives to a mortgagor the right to what is left after the mortgagee is fully paid, and such a provision can not invalidate a mortgage. Bump on Fraud. Convey., 405. This surplus is always open to the attachment of creditors like an ordinary equity of redemption.

5. The trust mortgage is not fraudulent because the debts of the Sprague Manufacturing Company are mingled with those of A. & W. Sprague and both are represented together by the new notes. This was not done as a gratuity on the part of the company. The complication of their interests and obligations made it difficult to do otherwise. But the property of A. & W. Sprague was also put in, as well as that of other individuals of the family, and it does not appear but that the creditors of the company were actual gainers by the arrangement. At any rate there is no reason for treating the trust mortgage as fraudulent on this ground, as a court of equity could apportion the assets among the creditors in such a way as to do perfect justice.

6. But it is said that if the trust mortgage is valid the instrument which is called an assignment is invalid, and the requisites of an assignment in insolvency under our statute are referred to as showing its defects. But by our statute any assignment that is void against creditors is yet good if proceedings in insolvency are not instituted within sixty days after it is made, and there is no claim that any such proceedings were taken here. It is not therefore invalidated by the statute, but must be invalid, if at all, at common law. Such an assignment operates as a conveyance

at common law, and is therefore valid everywhere where not invalidated by statute. *Sisson* v. *Roath*, 30 Conn., 15; *Hawkins's Appeal from Probate*, 34 id., 548. That the assignment gives a preference to a class of creditors, as we have shown before, is no objection to it at common law. Nor is it that power is given to the trustee to carry on the business of the assignors or allow them to do it. It is expressly provided that it shall not be done unless it is for the best interest of the creditors. Such a provision is held valid where its object is to promote the interest of creditors. *Janes* v. *Whitbread*, 11 Com. B., 417; *Coates* v. *Williams*, 7 Exchr., 205. And there is nothing in the provision that the trustee shall not be personally liable for loss in carrying on the business. If the trustee in good faith and on reasonable grounds decides that it is for the best interest of the creditors that the mills should be run instead of standing idle, he ought not to become personally liable either for the expenses or for losses; and such would be the rule of law if no such provision had been inserted in the assignment. It clearly was not intended to exempt him from liability for his own default or negligence. A court of equity would hold him to this responsibility in any event. And the assignment can not be regarded as intended, in any proper sense, to delay creditors. Doubtless it was the purpose of the grantors to prevent this vast amount of property from being sold at once, and to have it for a reasonable time in the possession of Chaffee; and no doubt this would have been a benefit to the grantors, as such a course would cause the property to bring nearly its value, so as to pay all the creditors in full and perhaps leave something remaining; but these results and benefits are not improper, and the expectation or hope of them can not avoid the deed.

*J. Halsey* and *R. Hicks*, contra.

Hovey, J. The plaintiff brought a suit by writ of attachment against the A. & W. Sprague Manufacturing Company, and on the 18th of October, 1879, caused the

real estate known as the Baltic Mills property in the town of Sprague to be attached by virtue of the writ. The writ was returnable to the Superior Court for New London County; and at the term of that court held on the first Tuesday of June, 1880, the plaintiff recovered judgment against the said A. & W. Sprague Manufacturing Company for the sum of $902,693.25. A certificate thereof was filed in the town clerk's office of the town of Sprague, in the form prescribed by chapter 58 of the Statutes of 1878, on the 8th day of June, 1880, and on the 15th day of the same month was duly recorded.

The statute declares that such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described in the certificate, and that such lien may be foreclosed or redeemed in the same manner as mortgages upon the same estate.

The present suit is brought to foreclose the lien thus acquired, if a lien was thus acquired upon the lands described in the certificate filed, and also to set aside two deeds of the same property—one executed by the said A. & W. Sprague Manufacturing Co., Wm. Sprague, Amasa Sprague, Mary Sprague, Fanny Sprague, and A. & W. Sprague, to the defendant Chaffee, on the first day of November, 1873, and recorded December 2, 1873; the other executed by the said A. & W. Sprague Manufacturing Co. to said Chaffee, on the 6th day of April, 1874, and recorded the same day—on the alleged ground that both deeds are, as against the plaintiff, fraudulent and void. The plaintiff also demands possession of the premises sought to be foreclosed, and for other specific relief. The defendants severally demur to the plaintiff's complaint, and to the relief sought, and assign several causes of demurrer, one of which is that the complaint is multifarious.

The first question to be considered, therefore, is, whether the complaint is bad for multifariousness. The authorities bearing upon this question are very numerous, but there is deducible from them all no positive, inflexible rule as to what in the sense of courts of equity constitutes multifa-

riousness, which is fatal to the suit on demurrer. "These courts," says Judge STORY, "have always exercised a sound discretion in determining whether the subject-matters of the suit are properly joined or not, and also whether the parties, plaintiffs and defendants, are or are not properly joined. And in new cases courts will be governed by those analogies which seem best founded in general convenience, and will best promote the due administration of justice, without multiplying unnecessary litigation on the one hand, or drawing suitors into needless expenses on the other." It is stated by the same authority that multifariousness "is the improperly joining in one bill distinct and independent matters, and thereby confounding them; as for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several in the same bill." Story Eq. Pl., § 271. "What is more familiarly known by multifariousness as applied to a bill is, where a party is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever." Id., § 530.

These definitions are borrowed from the opinion of Lord COTTENHAM in the case of Campbell v. Mackay, 1 Mylne & Craig, 617. That was a case where there were two settlements vesting different funds in two sets of trustees, and a will bequeathing other moneys to the trustees of the two settlements. The trusts, both of the will and the two settlements, were for the benefit of the wife and children of the settler, who was also the testator. A bill filed by the wife and children, after the husband's death, against all the trustees, for the administration of the property comprised in the two settlements and the will, was demurred to on the ground of multifariousness. It was argued in support of the demurrer, that with one of the settlements two of the defendants had no concern whatever, and that the same might be said of two other defendants with respect to the other settlement, while under the will three of the defendants were executors and trustees, and another defendant was an absolute stranger;

that the bringing of the bill was, therefore, an attempt to unite in one record claims growing out of three distinct instruments, and prosecuted against four several defendants, each of whom might truly affirm that a large portion of the case made, and of the relief sought, was, as to him, utterly inapplicable, and that consequently the bill was multifarious. But the demurrer was overruled, first by the Vice-Chancellor, and afterwards by the Lord-Chancellor on appeal. The Lord-Chancellor, in giving the reason for his judgment, says:

" The first observation that occurs is that, although the defendants are not all trustees of the same deeds, the suit seeks some relief against all of them, and there is a common interest in all the plaintiffs under all the instruments. "The proposition contended for on behalf of the demurring parties is that, as a general rule (and the rule is supposed to be supported by the dicta of Sir JOHN LEACH, in *Salvidge* v. *Hyde*, 5 Madd., 138), it never can be permitted that distinct matters should be united in the same record. The proposition, of course, if carried to its full extent, would go to prevent the uniting several instruments in one bill, although the same parties were liable in respect to each, and the same parties were interested in the property which was the subject of each. So that if, for instance, a father executed three deeds, all vesting property in the same trustees, and upon similar trusts for the benefit of his children, although the instruments and the parties beneficially interested under all of them were the same, it would be necessary to have as many suits as there were instruments. That is a proposition to which I do not assent. It would indeed be extremely mischievous if such a rule were established in point of law; no possible advantage could be gained by it; and it would lead to a multiplication of suits in cases where it could answer no purpose to have the subject-matter of the contest split up into a variety of separate bills. To lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition, is upon the authorities utterly impossible. The cases upon the subject are extremely various; and the court in deciding them seems to

have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule.

"The language of Sir JOHN LEACH, in *Salvidge* v. *Hyde*, is of course to be understood with reference to the particular case before him, and, considered in that point of view, it was perfectly correct, although, stated as a general proposition, it would run counter to a numerous class of cases. The only way of reconciling the authorities upon the subject is by adverting to the fact that, although the books speak generally of demurrers for multifariousness, yet in truth such demurrers may be divided into two distinct kinds. Frequently the objection raised, though termed multifariousness, is in fact more properly misjoinder; that is to say, the cases or claims united in the bill are of so different a character that the court will not permit them to be litigated in one record. It may be that the plaintiffs and defendants are parties to the whole of the transactions which form the subject of the suit, and nevertheless the transactions may be so dissimilar that the court will not allow them to be joined together, but will require distinct records. But what is more familiarly understood by the term multifariousness, as applied to a bill, is where a party is able to say he is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever.

"The form of demurrers for multifariousness strongly illustrates this distinction, at least as it used to be understood; for the old form of the demurrer upon the last-mentioned ground went on to state the evil of uniting distinct matters in one record, whereby parties were put to great and useless expense, an objection which has no application in a case of misjoinder. * * * What would be required in order to support the defendants' proposition would be some case in which, there being a common interest in the plaintiffs, and the defendants representing and being interested in all the different questions raised on the record, and the suit having a common object, a demurrer for multifariousness had been successful. No case has been produced

to show that the court will not permit such a suit to be instituted. But, in the course of the argument, cases were referred to which prove, when examined, that the court has not gone that length, and that it has always exercised a discretion in determining whether the subject matters of the suit are properly joined or not. It is not very easy *a priori* to say exactly what is, or ought to be, the line regulating the course of pleading upon this point. All that can be done is, in each particular case as it arises, to consider whether it comes nearer to one class of decisions or the other."

In the case of *The Attorney General* v. *Cradock*, 3 Mylne & Craig, 85, an information was filed against the trustees of certain charities and against a person who, in concert with one of the trustees, had fraudulently effected the exchange of a farm, in which he and the trustee were jointly interested, for a portion of the charity lands; praying a general account of the charity estates, an apportionment of the rents among the different charitable objects, and a scheme, and praying also that the exchange might be declared void, and that a new trustee might be appointed in the place of the trustee who had so acted. The defendant, who had colluded with one of the trustees in the exchange referred to, demurred to the information for multifariousness, and the demurrer was sustained by the Vice-Chancellor; but, on appeal to the Chancellor, Lord COTTENHAM, it was overruled. In giving his opinion in this case, the Lord-Chancellor said " that the object of the rule against multifariousness was to protect a defendant from unnecessary expense; but it would be a great perversion of that rule if it were to impose upon the plaintiff and all the other defendants the expense of two suits instead of one." He then observed " that the object of the suit was to establish that the defendant Cradock had, by means of the transaction stated in the information, become a trustee of a part of the charity estate. Suppose he had been an actual instead of a constructive trustee, and the object was to have accounts taken and an administration made of the whole charity property, could he object on that

ground that he was a trustee only of a part of the charity property, and that he could not be made a party to a suit relating to the whole? If that were to prevail it would be directly against the decision in *Campbell* v. *Mackay*. There, some of the parties were trustees of part only of the trust property in question, but the trusts were so united by the allegations of the bill that the whole was made one fund, and first the Vice-Chancellor, and afterwards myself, were of opinion that, in such a state of circumstances, the objection of multifariousness could not be sustained. If that be so, according to the decision in *Campbell* v. *Mackay*, when the defendant is trustee only of a part, but which part is so blended with the remainder as to make it improper to separate it, is greater favor to be shown to a person who becomes one of the trustees by joining with another trustee in committing a breach of the trust? The doctrine of multifariousness would be carried much too far if that were to be the case."

In the case of *Knye* v. *Moore*, 1 Sim. & Stu., 61, a mother, who claimed an annuity for herself, joined her children with her as co-plaintiffs in a bill, the object of which was to establish two distinct claims, arising under separate instruments, the mother claiming an annuity under one, and the mother and children claiming the benefit of a settlement under the other; and that was held not to be multifarious.

In *Kensington* v. *White*, 3 Price, 164, a bill was filed by seventy-two underwriters to restrain several actions on different policies effected upon different ships. The defendants, indeed, had a common interest in all, because they were the owners of the ships and plaintiffs in all the actions; but there were seventy-two individuals, all not only liable to separate actions, but actually defendants in separate actions, united together against the parties who were plaintiffs in all the actions, for the purpose of obtaining, by one bill, a discovery in aid of the defence against all the actions; and that was held in the Court of Exchequer not to be multifarious.

These cases are sufficient to show how little disposed the

English courts have been to entertain the objection of multifariousness, where the justice of the case did not absolutely require it, and the length to which those courts in the exercise of their discretion have gone in upholding and sustaining bills in cases in which that objection has been taken. But there are many other cases in which the same disposition is manifested, and in which the courts have gone an equal length in overruling demurrers on the ground of multifariousness.

Among them may be mentioned the cases of *Troup* v. *Ricardo*, 4 De Gex. J. & S., 489; *Hamp* v. *Robinson*, 3 id., 97; *Wolsham* v. *Stainton*, 1 id., 678. Lord Justice TURNER, in giving his opinion in *Hamp* v. *Robinson*, said:—"I think the cases, especially *Campbell* v. *Mackey*, go to this extent, that if a plaintiff has against one party a common case in respect to several matters, such that as against that party those matters might properly be all joined in one bill, he is not to be compelled to file more than one bill in respect to them, because some third person who has such an interest in respect of one of those matters as to make him a necessary party to any proceeding in respect of it, has no interest in any of the other matters, but the plaintiff may combine all the matters in one suit, making that third person a party, and that party cannot object on the ground of his want of interest in some of the matters."

The same disposition is exhibited and the same doctrine is sustained in numerous decisions of the courts of this country, including the decisions of this court in the cases of *Cornwall* v. *Lee*, 14 Conn., 524; *Robinson* v. *Cross*, 22 id., 176; and *Middletown Savings Bank* v. *Bacharach*, 46 id., 522.

In *Gaines* v. *Chew*, 2 How. (U. S.), 619, and *Oliver* v. *Piatt*, 3 How. (U. S.), 333, it is impossible, say the court, to lay down a general rule as to what constitutes multifariousness; every case must be governed by its own circumstances, and the court must exercise a sound discretion on the subject. The correctness of this position is expressly recognized in the cases of *McLean* v. *LaFayette Bank*, 3 McLean, 415; *Abbott* v. *Johnson*, 32 N. H., 26; *Carter* v.

*Kerr*, 8 Blackf., 373; *Marshall* v. *Means*, 12 Geo., 51; *Butler* v. *Spann*, 37 Miss., 234.   And in *Carroll* v. *Roosevelt*, 4 Edw. Ch., 211, it was held that where the complainants in a bill in equity have a common interest in all the matters comprised in the bill, and the defendants are concerned only in portions of the subject matter, the objection of multifariousness as a ground of demurrer is within the discretion of the court, who may allow the bill to stand if it be expedient to try the whole matter in one case.

In *Richards* v. *Pierce*, 52 Maine, 560, a creditor caused his debtor's right to redeem a prior mortgage to be sold on execution, and after the time for redemption expired, commenced a suit in equity against the assignee of the mortgage to redeem it, making the execution debtor a party defendant.   It was alleged among other things in the bill that a certain other mortgage therein described given by the debtor to the other defendant was fraudulent and void as against the complainant, and the relief prayed for was permission to redeem the former mortgage, and that the latter might be declared void, etc.   The bill was demurred to for multifariousness, it being claimed that it sought to redeem two distinct mortgages of different dates, originally between different parties, founded on different transactions in no wise dependent on each other, and also sought to redeem upon distinct and independent grounds, raising separate and distinct issues.   The bill was also demurred to for a misjoinder of parties, one of the defendants' interest in the property having ceased when his right to redeem the officer's sale of his right in equity expired.   But the court overruled the demurrer and held that the bill should not be dismissed on the ground either of multifariousness or of misjoinder of parties.   The same action was taken by the same court in the cases of *Kennebec & Portland R. R. Co. et. al.* v. *Portland & Kennebec R. R. Co. et. al.*, 52 Maine, 173; *Warren* v. *Warren*, 56 Maine, 360, and *Weston* v. *Blake*, 61 Maine, 452.

In *Chase* v. *Searles*, 45 N. H., 519, it was held that it was not multifarious to join in a creditor's bill, as parties defen-

dant with the debtor, several persons to whom he conveyed distinct parcels of property, out of which the plaintiff seeks satisfaction of his debt, although such persons may have no common interest in the several parcels so conveyed. And in *Dimock* v. *Bixby*, 20 Pick., 377, it was held that a demurrer for multifariousness will hold only where the plaintiff claims several matters of a different nature, and not where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights. The same doctrine is recognized in *Boyd* v. *Hoyt*, 5 Paige, 65. That was a creditor's bill brought to reach the property of a judgment debtor, transferred fraudulently to two or more persons, holding different portions of it by distinct conveyances; and it was held that such persons might be joined. The Chancellor lays it down that, when the object of a suit is single, but different persons have or claim separate interests in distinct or independent questions, all connected with and arising out of the single object of the suit, the complainant may bring such persons before the court as defendants, so that the whole object of the bill may be obtained in one suit, and to prevent further unnecessary and useless litigation.

In *Morton* v. *Weil*, 33 Barb., 30, creditors by different judgments united in bringing a suit against the executors of the will of a person then deceased, alleging the fraud of that person in the contracting of the debts, and joined, as defendants, various parties having liens or titles to the property in question, by reason of judgments or assignments, alleging that such liens or titles were fraudulently obtained, and prayed that the same might be vacated and the defendants be held to account for and pay over the property. On demurrer to the bill it was held that the parties thereto and the causes of action therein stated were properly joined, and that it was in other respects sufficient.

In *Way* v. *Bragaw*, 1 C. E. Green, 213, the purpose of the bill was to enable the complainant to obtain satisfaction of a judgment at law out of the property of his debtor, one of the defendants; and to this end the complainant sought to re-

DeWolf v. Sprague Manufacturing Co.

move out of his way certain fraudulent conveyances and encumbrances, and to bring within the reach of his judgment equitable interests which were not the subjects of execution at law; it was held to be no objection that one or more of the defendants, to whom parts of the property had been fraudulently conveyed, had nothing to do with other fraudulent transactions. " The grounds of the suit," said Chancellor GREEN, " are not wholly distinct and unconnected. They form parts of a series of transactions, or of a course of dealing, by which it is alleged that the debtor is seeking to defraud his creditors. They all tend to one end, the defeat of the plaintiff's claim, and although it is sought to set aside two distinct incumbrances, they are necessarily connected, not only in their operation against the complainant's remedy at law, but in the relief which is to be administered." Again, the learned Chancellor said : " The case against the debtor is so entire that it cannot be prosecuted in several suits, and yet each of the defendants is a necessary party to some part of the case stated. In such a case neither of the defendants can demur for multifariousness, or for misjoinder of causes of action, in some of which he has no interest." The same court decided in the case of *Hicks* v. *Campbell*, 4 C. E. Green, 183, that a bill is not multifarious which unites several matters distinct in themselves, but which together make up the plaintiff's equity and are necessary to complete relief. See also *Randolph* v. *Daly*, 1 C. E. Green, 313.

In *Williams* v. *Neil*, 10 Rich. Eq., 338, a creditor's bill filed against the debtor and his grantees, for the purpose of setting aside a number of voluntary conveyances severally made to each of the parties, was demurred to for multifariousness, but the demurrer was overruled. And in *Harrison* v. *Hallam*, 5 Coldw. (Tenn.), 525, the court say that it is proper, where there are several judgment debtors in the same judgment, and one of them has made a fraudulent conveyance to one grantee and another has made a similar conveyance to another grantee and a third has made a like conveyance to another grantee, to unite all the debtors and their several fraudulent grantees in one common bill for the relief of the judgment creditors.

Where a debtor, in order to defraud his creditors, purchased lands, causing the deed to be made to his wife, who participated in the fraud to its whole extent and conveyed land to another person with the same intent, who conveyed it to a third, both grantees being cognizant of the fraud, it was held in an action brought by a creditor to set aside the conveyances, that both transactions being of the same nature though different in form could be properly joined in the same complaint. *North* v. *Bradway*, 9 Minn., 183.

Two of four defendants in a suit in equity demurred to the plaintiff's bill because several independent causes were alleged therein, in which they averred that they had no interest or concern; but one of the demurring defendants being charged in the bill with being concerned in all the causes assigned, and the other being charged with having combined and confederated with all the other defendants to defraud the plaintiff in relation to the subject matter of the controversy, the court overruled the demurrer. The other two defendants demurred because the bill was exhibited for distinct causes, having no relation to or dependence on each other, concerning divers and distinct persons having no common interest therein; but it appearing to the court that the specifications in the bill related to one subject matter in which all the defendants were alleged to have been combined and concerned to the prejudice of the plaintiff, the cause of demurrer was adjudged insufficient and it was overruled. *Brown* v. *Haven*, 12 Maine, 164.

The rule in relation to multifariousness, say the Supreme Court in Iowa, is one of convenience; and though the matters are distinct, yet if justice can be administered between the parties without a multiplicity of suits the objection will not prevail. *Bowers* v. *Keesecher*, 9 Iowa, 422. And in *Marshall* v. *Means*, 12 Geo., 61, the court say that the objection of multifariousness is always discouraged by courts when, instead of advancing, it will defeat the ends of justice.

These authorities, with the statutes of 1875, chapter 54, and the Practice Act, fully sustain the entire frame work of

the complaint in the case before us, and the right of the plaintiffs to join in one bill the several causes or matters which the complaint embraces. The joinder can work no inconvenience or hardship to either of the defendants, or occasion difficulty, delay or embarrassment in the trial; and it will certainly save expense to the parties, prevent a multiplicity of suits, and advance the ends of justice. The bill in the case of the *Middletown Savings Bank* v. *Bacharach*, 46 Conn., 513, one of the authorities cited, was, it will be remembered, a bill for foreclosure, for the removal of a cloud upon the plaintiff's title arising from tax sales, and for the possession of the mortgaged premises. Two of the defendants objected that the bill was multifarious, first, because it combined distinct claims which had no connection except that they pertained to the same premises, one claim being under the mortgage, one of an entirely different nature by reason of the tax deeds, and a third for the possession of the premises; second, because the defendants were different under each claim—only two of them being the necessary defendants to the portion which prayed for the removal of the cloud upon the title, and only the parties in possession being interested in the prayer for possession; and because six defendants were brought into court and compelled to abide the result of a contest upon questions to which they were not proper parties. But it was held that the bill was not multifarious for either of the causes assigned. Judge CARPENTER in giving the opinion of the court says: " It may be true that different respondents may have distinct and separate interests in the property mortgaged, or portions of it, which they acquired after the mortgage was given, and that some relief is asked for which does not affect them, but it is equally true that one general right is claimed by the bill—the extinguishment of the equity of redemption, unless the parties interested therein, or some of them, shall pay the debt within the time limited. As the bill seeks as its leading object the foreclosure of the mortgage, it was necessary that all persons having such an interest in the property as to give the right to redeem should be made parties respondent. All

other relief prayed for is incidental to this main object, and is for the purpose of making the foreclosure effective. That this incidental relief is asked for against some of the respondents and not against all, cannot make the bill multifarious." This case stands, in principle, upon all fours with the case at bar, and should have a controlling effect in the determination of the question as to the sufficiency of the present bill.

But the defendants insist that the plaintiff occupies the position of a mortgagee whose mortgage was executed at the date of his attachment, or of the filing in the town clerk's office of the certificate of his judgment; and that, therefore, he had no right to make the defendant Chaffee, whom they style an "adverse claimant," a party to this suit, as the latter's title to the property sought to be foreclosed, by deed from the judgment debtors, was prior in point of time to the plaintiff's lien. And they also insist that the only proper parties defendant are the judgment debtors and such other persons, if any there are, who have acquired interests from them since the date of the lien; that the defendant Chaffee's interests can in no way be affected by the suit, and that he has no interest in it; that there being no privity between him and the plaintiff, the latter could not make him a party for the purpose of litigating his claims of title; and that the making him a party defendant with the judgment debtors, renders the plaintiff's bill bad for misjoinder as well as multifariousness. And in support of these claims they refer us to several reported cases, and make the following quotation from the second volume of Jones's Treatise on the Law of Mortgages, section 1440: "Adverse claimants cannot be made parties to a foreclosure suit for the purpose of litigating their titles. The only proper parties are the mortgagor and mortgagee, and those who have acquired any interests from them subsequently to the mortgage. An adverse claimant is a stranger to the mortgage and the estate. His interests can be in no way affected by the suit, and he has no interest in it. There being no privity between him and the mortgagee, the latter cannot make him a party defen-

· dant for the purpose of trying his adverse claim in the foreclosure suit. A bill which makes defendants persons who claim title adversely for the purpose of litigating and settling their rights, is bad for misjoinder and multifariousness." But in the next section of the same treatise, the learned author says: "It has been held, however, that a question of priority between mortgages may be settled in a foreclosure suit upon a first mortgage, by allowing the second mortgagee to intervene and set up the statute of limitations as a bar to the mortgage upon which the suit was brought; and in like manner judgment creditors have been allowed to intervene and contest the validity of a mortgage; and a junior mortgagee might perhaps be allowed to make a prior mortgagee a party to the suit upon a special allegation of facts which would give him equitable precedence or would put the validity of the prior mortgage in issue." 2 Jones on Mortgages, § 1441, citing *Lord* v. *Morris*, 18 Cal., 482; *Union Bank* v. *Bell*, 14 Ohio St., 200; *Dawson* v. *Danbury Bank*, 15 Mich., 489.

It was, however, held by this court in *Broome* v. *Beers*, 6 Conn., 207, and in *Palmer* v. *Mead*, 7 Conn., 149, that in a suit for foreclosure the title to the mortgaged premises could not be investigated. But in the latter case the doctrine was vigorously controverted by Judge DAGGETT in a dissenting opinion in which PETERS, J., concurred; and in *Woodruff* v. *Cowles*, 8 Conn., 35, it was decided that to a bill of foreclosure usury might be shown as a defence. The next case in which the question arose was that of *Frink* v. *Branch*, 16 Conn., 260. In that case it was decided that in a bill of foreclosure it was incumbent upon the plaintiff to allege a title in himself, either legal or equitable, to the mortgaged premises, and to establish such title, at least *primâ facie*, by proof; and that the defendant had the corresponding right to attack it. Judge CHURCH, in giving the reasons of the court for this decision, said: "It was once supposed that upon a bill to foreclose a mortgage, the title of the mortgagee would not be investigated, and that the parties, in such a case, would be left to litigate that matter in an action

at law; citing *Broome* v. *Beers* and *Palmer* v. *Mead.* "It is not often in proceedings of foreclosure that the title of the mortgagee is directly put in issue, or constitutes the principal subject of controversy; although the entire purpose of the plaintiff is, in default of payment, to make perfect a title which was before qualified; and the ground of his application is that he has a mortgage title; and without an averment of facts constituting such title his bill would be defective. It may not be necessary either to allege or prove the precise condition of the title, whether it be in fee or in tail, for life or for years; but it seems to us, as the right of the plaintiff to ask the interference of the court depends upon some title in himself to the land mortgaged, either legal or equitable, that it is incumbent upon him to establish it, at least *primâ facie;* and of course the defendant must have a corresponding right to attack it. A decree in favor of a party, without interest in the subject to be effected, would be useless; and to call upon a court of justice to act in such a case at a venture, would be trifling with judicial proceedings. The decision of this court in the case of *Woodruff* v. *Cowles,* 8 Conn., 35, as we suppose, warrants us in these remarks, as well as in the expression of the opinion that upon a process of foreclosure the title of the mortgagee may become the subject of inquiry and decision. And although the judge who drew up the opinion of the court in that case confines himself ostensibly to the question whether usury could be proved in defence, yet it is obvious that even that question involved the principle which we have now advanced, and that the court so understood and intended to consider it." In *Williams* v. *Robinson,* 16 Conn., 517, and *Wooden* v. *Haviland,* 18 Conn., 101, it was held that if the mortgagee have any interest whatever in the mortgaged premises by virtue of his mortgage, he is entitled to a decree of foreclosure, clearly implying that he must have and prove some title or he cannot maintain a suit for such a decree. The same doctrine is laid down in *Hill* v. *Meeker,* 23 Conn., 592. In *Bull* v. *Meloney,* 27 Conn., 560, which was a suit for the foreclosure of mortgaged premises, the opinion of

Judge ELLSWORTH manifests a feeling of dissatisfaction on
the part of the majority of the court with the decision in
*Frink* v. *Branch*, and of approval of the doctrine laid down
in *Broome* v. *Beers* and *Palmer* v. *Mead*. But the court
went no further than to decide that an allegation in the bill
that the respondent did execute to the petitioner a deed of
a certain piece of land [describing it with the condition] to
secure the payment of the debt described, was a sufficient
averment of an interest in the mortgaged premises in the
petitioner, to warrant the court in entertaining the bill and
passing a decree of foreclosure upon it. But in making
that decision the majority of the court say: "We admit
that a petitioner must have an interest in the subject matter
which he presents for adjudication, and that he must, in his
bill, aver what that interest is, and by proof establish the
truth of his averments. This we think he has done in this
instance." The question is referred to by Judge CARPEN-
TER in *Middletown Savings Bank* v. *Bacharach.* He says:
"It will be observed that the statute" (referring to the
statute of 1875 which authorizes an execution of ejectment
to issue in a suit for foreclosure) "does not authorize a court
of chancery to settle the title. The court did that as
between the mortgagee and the owners of the equity of
redemption and in many other cases prior to and independent
of the statute. It was formerly thought that it could not
be done. *Broome* v. *Beers*, 6 Conn., 108; *Palmer* v. *Mead*,
7 Conn., 149. But it is now well settled that it can.
*Cowles* v. *Woodruff*, 8 Conn., 35; *Frink* v. *Branch*, 16
Conn., 260; *Alden* v. *Trubee*, 44 Conn., 455. The only
power, therefore, conferred by the statute is that of granting
full relief by putting the petitioner in the possession of the
property, after the court, in the exercise of the ordinary
chancery jurisdiction, has determined that he is entitled to
it." Again he says: "The object of the statute was to save
a multiplicity of suits."

It being thus established that the title to mortgaged
premises may be investigated in suits for foreclosure gener-
ally, why may not the title to the premises sought to be

foreclosed in the case before us be the subject of investigation? The only answer given is that the defendant Chaffee is an adverse claimant, under conveyances executed prior in time to the lien of the plaintiff, and that therefore under the authority cited by counsel for the defendants from Jones on Mortgages, and the other authorities referred to in that connection, Chaffee cannot be made a party to the suit. Is this a sufficient answer? If it is, the plaintiff has no standing in court; for unless the title to the premises can be investigated, he cannot show that the conveyances from which Chaffee claims to derive his title are fraudulent and therefore void, or that they are void for any other cause, and if he cannot be permitted to show that, he cannot show that he has a lien upon the premises upon which a judgment of foreclosure can be rendered. But the answer given is wholly insufficient. For by the twelfth section of the Practice Act any person may be made a defendant who has or claims an interest in the controversy or any part thereof adversely to the plaintiff, or whom it is necessary for a complete determination or settlement of any questions involved therein to make a party. Chaffee, therefore, is properly made a defendant even if he is an adverse claimant, and his title is a proper subject of investigation in this suit, and if, upon such investigation, it shall appear that the title which he claims was derived from conveyances which, as against the plaintiff, are fraudulent and void, or are void for any other cause, the plaintiff's lien will be entitled to priority over those conveyances, and become a first incumbrance upon the estate. It necessarily follows that the complaint is not objectionable for multifariousness or for misjoinder of defendants, and that those causes of demurrer should be overruled.

The question then arises, whether the deeds under which the defendant Chaffee claims title to the premises sought to be foreclosed by the plaintiff are valid instruments of conveyance. The deed of November 1, 1873, is, as already stated, a deed from the A. & W. Sprague Manufacturing Company, William Sprague, Amasa Sprague, Mary Sprague,

Fanny Sprague, and A. & W. ·Sprague, who are described therein as parties of the first part, to the defendant Chaffee, who is described as party of the second part. It recites that the said A. & W. Sprague Manufacturing Company, A. & W. Sprague, and Amasa Sprague and William Sprague individually, were, at the time of its execution, indebted or under liability to divers persons in sums amounting in the aggregate to about fourteen million dollars, which they and the other parties of the first part were desirous of funding and securing by the conveyance of their estates to the defendant Chaffee as mortgagee in trust, and that for this purpose and to this end the said A. & W. Sprague Manufacturing Company had executed sixteen thousand five hundred promissory notes of even date with the deed, and for sums amounting in the whole to the aggregate of said indebtedness and liabilities, payable to the order of the said firm of A. & W. Sprague, three years from January 1, 1874, or at the election of the makers at an earlier date, with interest semi-annually, at the rate of seven and three-tenths per cent. per annum, and indorsed by said firm, and that the same had been placed in the hands of the defendant, Chaffee, to be by him used and applied to the payment or retiring of such of the indebtedness and liabilities aforesaid as the holders thereof should, within nine months from the date of the deed, bring in and surrender and discharge, or agree to extend for the term and according to the provisions of said notes. The deed also recites that the preservation of the manufacturing properties of said A. & W. Sprague Manufacturing Company and the best interests of the creditors required, to prevent great shrinkage and loss, that the business of the mills and printworks should, in the mean-time, be continued. The clauses which follow these recitals are as follows: "Now, therefore, said parties of the first part, in consideration of the premises and of the trusts hereinafter declared, and in further consideration of one dollar to them paid by said party of the second part, the receipt of which is hereby acknowledged, do hereby give, grant, bargain, sell, and convey unto the said party of the

second part, his heirs, executors, administrators, and assigns, all the property, real, personal, and mixed, not exempt from attachment by law, which the parties of the first part or any or either of them have and hold in the following city and towns in the State of Rhode Island, viz.: the city of Providence, the towns of Cranston, Johnston, Coventry, East Greenwich, West Greenwich, South Kingston, Warwick, Pawtucket, Lincoln, North Providence, Cumberland, East Providence, and North Kingstown; in the following towns of the Commonwealth of Massachusetts, viz.: Attleborough and Palmer; in the following counties of the State of Maine, viz.: Somerset, Piscataquis, Franklin, Kennebec, Penobscot, and Aroostook; in the following counties of the State of New Hampshire, viz.: Grafton, Coos, Carroll, and Belknap; in the towns of Richmond and Lexington in the State of South Carolina; in the city of Washington in the District of Columbia; in the following towns of the State of Connecticut, viz.: Sterling, Sprague, Scotland, and Windham, including, in what is known as the Baltic mill property in said State of Connecticut, 4 iron water-wheels, 4 rotary pumps, 3 openers, 20 lappers, 412 cards, 19 double heads, 6 doublers, 5 grinders, 19 railway heads and troughs, 30 · drawing frames, 25 coarse speeders, 49 fine speeders, 275 spinning frames, 34 spoolers, 16 slasher warpers, 4 slashers, 20 warpers, 12 dressers, 36 pairs of mules, 1,973 looms, 1 boring machine, 1 upright drill, 2 iron planers, 8 turning engines, 1 circular saw, 1 vertical saw, 1 wood-planer, 1 gear-cutter, 2 bolt cutters, 1 run of gristmill stones, 1 bolter for gristmill, 1 corn cracker, 1 steam fire engine, 3 gas retorts, and all the taps, dies, and tools appertaining to the machine and blacksmith shops; and including, in what is known as the Oneco property, in said State of Connecticut, 250 stone hammers, 750 drills, and the tools and apparatus used in quarrying and cutting stone; and including in what is known as the South Windham property, the saws and tools in the said mill; and including the hay in barns and elsewhere in either of said towns in the State of Connecticut; and including, generally, within the foregoing description,

the two homestead estates, the Washington and Cove street lot, the Dyer street lot, the Dorrance street lot, the Pine and Page street lot, the Marine Railway property, the lot on the corner of Hope and Waterman streets, the Fenner Avenue lot, the Martin street property, the George, Pitman, and Ives street property, the Elmwood store property, the Ninth Ward property in the city of Providence; the Cranston Print Works property with about eighteen hundred and seventy acres of land and improvements thereon, in the town of Cranston; the Natick Mills property, with about eight hundred and thirty acres of land and improvements thereon, and the Ladd farm with about one hundred and one acres of land and improvements thereon, sometimes called the Coweset estate, in the town of Warwick; the Morgan Hill property with about six hundred and twenty-five acres of land and improvements thereon, in the town of Johnston; the homestead estate in South Kingston, with about four hundred and twenty-eight acres of land and improvements thereon; the mill property in Augusta, Maine, with about four hundred acres of land and improvements thereon; the mill property in Palmer, Massachusetts, with about seven acres of land and improvements thereon; the estates in the city of Washington, with about six acres of land and improvements thereon; the property in the city of Columbia, in the state of South Carolina, with about four hundred acres of land and improvements thereon; and also all the other estate and property, real and personal, of every name and nature, not exempt from attachment by law, wherever situated, and by whatsoever muniments of title evidenced, which any or either of the parties of the first part have, or may be entitled to, in possession or action, reversion or remainder; together also with all goods, stock, and supplies, manufactured, unmanufactured, and in process of manufacture, and all fixtures, machinery, tools, and other personal property of every kind, which said A. & W. Sprague Manufacturing Company may at any time, or from time to time, hereafter have, either in lieu of or in addition to those now on hand; but excepting from this conveyance all shares of capital stock, in any and every corporation wherever

located, belonging to any or either of the parties of the first part, the same to be transferred to said party of the second part, upon his request in writing, by way of pledge and collateral security, to secure the performance of the conditions of this instrument.

" To have and to hold said granted and bargained premises, with all the rights, privileges and appurtenances thereof, unto and to the use of him, the said party of the second part, his heirs, executors, administrators and assigns, in trust for the intents and purposes, and with, under, and subject to the powers and provisions hereinafter contained, but subject, nevertheless, to the following condition, that is to say: Upon condition, that if said parties of the first part, or any or either of them, their heirs, executors, administrators, or assigns, or any person for them or in their behalf, shall well and truly pay or cause to be paid all and singular the debts and liabilities aforesaid which shall be brought in under these presents and remain outstanding as hereinbefore provided, and all expenses and liabilities of every kind incurred in the execution of the trust hereinafter created or declared, and all the notes aforesaid that shall be issued by the trustee aforesaid, together with the interest thereon according to the tenor thereof, then this deed shall be and become void, otherwise shall remain in force. And subject to the condition aforesaid, in trust for said party of the second part, and other the trustees or trustee under these presents for the time being, to stand seized and possessed of the said granted estates and premises, and until default shall be made in the performance of the conditions aforesaid or any part thereof, or breach shall be made of any of the covenants or agreements hereinafter contained on the part of said parties of the first part to be kept or performed, or until sale under the trusts hereinafter declared, or until entry under the power in that behalf hereinafter contained, to permit and suffer said parties of the first part to retain the possession and use of said granted premises. Provided, and it shall be lawful for said trustees or trustee for the time being at any time, or from time to time before such default

or breach, or with or without previous entry, in their or his discretion, to sell, at public or private sale, any part or parts of said granted estate and property, and to execute and deliver such deed or deeds as may be necessary or proper to vest in the purchaser or purchasers thereof an absolute and indefeasible estate in fee simple therein, and to stand seized of all the purchase moneys to arise and received therefrom, for the uses and purposes hereinafter declared respecting the same. And provided further, that said trustees or trustee for the time being, may at any time, or from time to time, before default or breach as well as after, enter upon said granted estates and property, or any part or parts thereof, and take and assume the full and absolute possession and control of the same, and in their or his discretion to run and operate, or to close the mill or print works of said manufacturing company, or any or either of them, as said trustees or trustee for the time being shall deem for the best interests of the creditors. And provided also, and it is hereby declared, that in case default shall be made in payment of said notes hereby secured or any or either of them, or of the semi-annual interests due thereon, or breach shall be made of either of the covenants or agreements herein contained on the part of said parties of the first part to be kept and performed, and such default shall continue for the space of sixty days, then in such case the said trustees or trustee hereunder for the time being, in their or his discretion, may, and upon the request in writing of the holders of one-fifth in amount of the notes then issued and outstanding under these presents, said trustees or trustee for the time being shall, from time to time thereafter, either before or after entry as aforesaid, sell, either together or in parcels, the estates and property aforesaid, or any part or parts thereof, at public or private sale, as said trustees or trustee shall think best, first giving, in case of any auction sale under this or any other provision of this instrument, notice thereof by advertisement at least twice a week for four successive weeks in some public newspaper printed in said Providence, and such other notice as they or he may deem

advisable; and upon sale thereof to execute and deliver such deed or deeds as may be necessary or proper to vest in the purchaser or purchasers thereof an absolute and indefeasible estate in fee simple therein. And it is hereby declared that said trustees or trustee for the time being shall stand seized of all the purchase moneys to arise and received from sales or otherwise under any of the trusts of these presents, to apply and appropriate the same—first, to the payment of all expenses incident to such sales, and of all insurance moneys, taxes, and other charges, if any, paid or incurred by them in respect of said trust estates, together with a reasonable compensation to said trustees or trustee for the time being for their or his own services, and reasonable counsel fees and all other charges and liabilities paid or incurred by them, either in carrying on the business or in the execution of any other of the trusts hereby created; and secondly, the residue of all moneys received by them under any of the trusts of this instrument, from time to time, to apply and appropriate ratably to the payment of the principal and interest of all the debts and liabilities aforesaid of said parties of the first part which shall be brought in under these presents and remain outstanding as aforesaid, and of all the notes that shall be issued by said trustee and be outstanding under and secured by these presents, and although by their terms the same may not then have matured; accounting to said parties of the first part respectively, their heirs, executors, administrators or assigns, for any surplus, if any, that may remain after the full payment thereof.

"And it is further declared that no purchaser under any or either of the foregoing trusts shall be under any obligation to inquire into the necessity or regularity of any sale thereunder, nor see to the application of any of the purchase money thereof, but that the receipt of the trustees or trustee for the time being to such purchaser or purchasers for such purchase money shall be his or their full and effectual acquittance and discharge thereof. And if at any time said trustee, or any trustee to be appointed under these presents,

shall be desirous of resigning and of being discharged from the trusts aforesaid, it shall be lawful for them to do so, and in such case, or in case said trustees or any trustee appointed under these presents shall die or become incapable of acting in said trusts, it shall be lawful for the surviving or continuing trustees or trustee for the time being, by any writing or writings under their or his hands, to nominate and appoint, or in case at any time all the trustees for the time being shall resign together, then for the Supreme Court of the state of Rhode Island, sitting in equity, to appoint any person or persons to be a trustee or trustees in the stead and place of him or them so dying, resigning, or becoming incapable of acting as aforesaid; and thereupon, and as often as any such appointment shall be made, all the trust estates and property thus held under the trusts aforesaid shall, with all convenient speed, be so conveyed, assigned and transferred as to vest the same in the surviving or continuing trustees or trustee, under these presents as appointed, or otherwise duly appointed by any court of competent jurisdiction, who may immediately exercise any power or discretion herein granted, in the same manner as though originally named as trustee herein, and although the trust estate be not then vested in him. And no trustee under these presents shall be answerable or accountable for any loss which may happen to said trust estate or property, unless the same shall happen by his own neglect or default.

"And the said parties of the first part, for themselves and for their respective heirs, executors, administrators and assigns, do hereby covenant with the said party of the second part, his heirs, executors, administrators and assigns, at any time, or from time to time during the continuance of this security, to execute and deliver to the party of the second part, or other trustees or trustee under these presents for the time being, or to any purchaser under any of the foregoing trusts, such further conveyances or assurances of the estates or property hereby conveyed or intended to be conveyed, or any part or parts thereof, as said trustees or trustee for the time being may reasonably require; and at

all times during the continuance of this security, at their own costs and charges, to keep and maintain insurance for the benefit of said party of the second part under these presents, upon the mills, buildings, machinery, and other insurable property hereby conveyed, or intended to be conveyed, in such reasonable amounts, and in such insurance companies as said trustees or trustee for the time being shall approve; also that the profits that shall hereafter accrue in the business of said manufacturing company shall, from time to time, be by said company paid over to said trustees or trustee for the time being, to be held and applied to any of the purposes aforesaid, in the same manner as the other trust moneys under these presents; also to pay all taxes and assessments, rates and charges of every nature that may be laid or levied upon or in respect of said granted premises; and in default thereof it shall be lawful for said trustees or trustee for the time being to effect such insurance and to pay said taxes, assessments, rates and charges, and all sums paid therefor shall be a further lien upon said granted premises secured by these presents."

The complaint alleges that this deed, as respects the premises demanded and sought to be foreclosed by the plaintiff, is fraudulent and void as against him, because there are no descriptions or boundaries of the premises given, and no reference is made in the deed to any book or document describing the boundaries, and the premises are only described as "all the property, real, personal and mixed, not exempt from attachment by law, which the parties of the first part or any or either of them have and hold in the following towns of the state of Connecticut, viz.: Sterling, Sprague, Scotland, and Windham." Such a description has long been used in general assignments by debtors to trustees for the benefit of their creditors, and in conveyances of that kind is undoubtedly sufficient; but in mortgages a greater decree of certainty and particularity has been adjudged to be necessary. In the case of *Herman* v. *Deming*, 44 Conn., 124, which was a suit for foreclosure of a mortgage of real estate situated in the town of Canaan,

the deed described four tracts of land by their location, boundaries, the names of the abutting owners, and the number of acres contained in, and the names of, the several tracts. In these tracts one of the mortgagors had no interest; but she was the owner in her own right of a tract of woodland containing about fifty-three acres situated in the town of Canaan. The descriptive part of the deed closed as follows: "Also all such other lands as we, the said grantors, or either of us, own or have any interest in, situate in said town of Canaan; reference being at all times had to the land records of said Canaan and to the probate records for the district of Sharon for a more particular description of the same." It was held that this description was not sufficient to convey to the mortgagees any title to or interest in the tract of woodland. Judge PARDEE, in giving the reasons of the court for this decision, says: "We are not prepared to say that we should apply the same rule without qualification to a deed that was intended only as a conveyance of title. The policy of our law with regard to the definite information to be given to creditors and purchasers by mortgages, does not apply to ordinary conveyances. Here, however, comes in the policy of the law with regard to records of titles, which is applicable to all recorded conveyances, whether by absolute deed or mortgage. In *North* v. *Belden*, 13 Conn., 380, this court said: 'It has ever been the policy of our law that the title to real estate should appear upon record, that it might be easily and accurately traced. This policy has added greatly to the security of our land titles and has prevented much litigation which would otherwise have arisen.' And Swift in his Digest, vol. I, p. 122, lays it down that 'it is essential that the land to be conveyed should be so located, butted, bounded, and described in the deed, as that it can be known where it lies, and be distinguished from any other tract of land, or there must be such reference to some known and certain description as will reduce the matter to certainty.' If we were to give judicial sanction to this form of conveyancing, we should practically put an end to the recording

system. If we say that such general language, following as here a particular description, does more than strengthen and secure what has gone before it; that it is sufficiently descriptive to support a distinct and independent grant of additional real estate, and that it meets the requirements of that system, we should establish a precedent upon which grantees would hereafter rely, and from which the court would find it difficult to recede. After a succession of such conveyances land records would cease to furnish any information; the same confusion would result as would come from the removal of all fences, mere stones and other monuments, which indicate the location of separating lines. The rule of law which declares that to be certain which can be made certain is not complied with in such a deed. The rule demands a reference and pointing to particular documents or records. If we say that such a reference is sufficiently explicit for the town of Canaan and the probate district of Sharon, we say that it is proper for the town and probate district of Hartford, with its fifty thousand pages of records. A search through and an examination of these does not come within any reasonable interpretation of the rule."

The deed of the A. & W. Sprague Manufacturing Company and others of November 1, 1873, tested by the rule thus established, does not contain a sufficient description to convey to the defendant Chaffee any title to or interest in the premises sought to be foreclosed by the plaintiff, unless it is to be regarded as an assignment and not as a mortgage or a deed of trust in the nature of a mortgage. But the insufficiency of the description does not render the deed fraudulent. It becomes then an important inquiry whether the deed should be regarded as an assignment, or only a mortgage or a deed of trust in the nature of a mortgage. "A mortgage," says Chancellor KENT, "is the conveyance of an estate by way of pledge for the security of a debt, and to become void on payment of it. The legal ownership is vested in the creditor; but in equity the mortgagor remains the actual owner, until he is debarred by his own

default, or by judicial decree." 4 Kent's Com., 135. " The condition upon which the land is conveyed is usually inserted in the deed of conveyance, but the defeasance may be contained in a separate instrument. The essence of the defeasance is that it defeats the principal deed, and makes it void if the condition be performed." Id., 141. "In equity the character of the conveyance is determined by the clear and certain intention of the parties; and any agreement in the deed, or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of money, will make it such, and give the mortgagor the right of redemption." Id., 142. Judge STORY, in treating of mortgages, says: "As to what constitutes a mortgage, there is no difficulty whatever in courts of equity, although there may be technical embarrassments in courts of law. The particular form of words of the conveyance is unimportant; and it may be laid down as a general rule, subject to few exceptions, that wherever a conveyance, assignment, or other instrument transferring an estate, is originally intended between the parties as a security for money or for any other incumbrance, whether this intention appear from the same instrument or any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations thereof." 2 Sto. Eq. Jur., § 1018.

A deed conveying land to a trustee as security for the payment of a debt and conditioned to be void if the debt be paid when due, or at some other specified time, but in default of payment empowering the trustee to sell the land and apply the proceeds to the extinguishment of the debt, and pay over the surplus to the grantor, is sometimes called a deed of trust in the nature of a mortgage; but it contains all the elements necessary to constitute a mortgage, and is in legal effect a mortgage. 1 Jones on Mortg., § 62, and cases there cited; 2 Perry on Trusts, § 602 d. The power of sale contained in the deed does not take from the instrument its character as a mortgage, or deprive it of any of

the incidents of a conveyance of that description.    1 Jones on Mortg., § 62; 2 Perry on Trusts, § 602 *gg.*  Such a power executed to one who relies upon it, and expects and intends to purchase an absolute estate, would probably pass an unconditional title to the purchaser, though the question, having never been before this court, remains in this state open and undetermined.   But while the power remains unexecuted the relation of mortgagor and mortagee subsists, if that was the relation created by the instrument separate from the power.   And in England it was held in the case of *Craft* v. *Powel*, 2 Comyn, 607, that if the purchaser knows the original nature of the transaction, and appears not to have purchased without reference to the conditional character of the title, he will be compelled in equity to surrender it on receiving the money he has advanced.   The right of redemption, which is the true indicium of a mortgage, remains in the mortgagor and his representatives until it shall be foreclosed, or until, availing himself of his power, the mortagee shall have made a conveyance pursuant to it, to some one who shall intend to purchase an irredeemable estate.   *Eaton* v. *Whiting*, 3 Pick., 484.

The deed under consideration comes clearly within the description of a deed of trust in the nature of a mortgage. It is a conveyance to a trustee for the purpose of securing the payment of certain notes, which it describes, of one of the grantors; it is conditioned to be void if the grantors, or any or either of them, shall pay the notes according to their tenor, and the expenses and liabilities incurred in the execution of the trust; and it empowers the trustee to sell the property conveyed to him, and apply the proceeds of the sale to the payment of the notes, and to pay over the surplus to the grantors.   It must, therefore, be considered and treated in this case as a mortgage.

But the complaint alleges, and the plaintiff insists, that the deed, even if its description of the premises is sufficient, is fraudulent and void as against the non-assenting creditors of the A. & W. Sprague Manufacturing Company, for the following reasons:—

1. Because that company, at the time of the execution and delivery of the deed were, and ever since have been, hopelessly insolvent; and fearing attachment by the plaintiff and other creditors, they executed and delivered the deed to the defendant Chaffee, without consideration, for the purpose of placing their property beyond the reach of their creditors and of delaying and hindering them in the collection of their claims.

2. Because the deed contains provisions that the grantors and Chaffee should carry on the business theretofore carried on by the grantors.

3. Because the deed provides, first, for the payment of all the costs and charges in connection with the management of the trust estate and of all preferred claims, and secondly, of those creditors who should accept the terms of the deed, that is, waive and discharge their original claims and accept the new notes provided for in the deed and extending beyond the maturity of the original claims; and that the residue of the money and property should be returned to the grantors.

4. Because the deed diverted the property of the A. &. W. Sprague Manufacturing Company to pay the claims of other companies and parties, to the injury of their own creditors.

5. Because the defendant Chaffee, as trustee, has given the use and control of a large amount of the trust estate to the said Amasa Sprague, William Sprague, Mary Sprague and Fanny Sprague, and has paid them out of the funds of that estate large sums of money for no legal or sufficient consideration.

6. Because a large number of the creditors never accepted the terms of the deed.

7. Because the deed provides that said Chaffee, as trustee, should not be answerable for any loss which might happen to the trust estate, unless the same should happen by his own default or neglect.

8. Because said Chaffee, as trustee, has paid large sums of money out of the funds of said estate to apply as princi-

·pal upon notes held by creditors who did not accept the terms of the deed.

9. Because the plaintiff was never a party to the deed and never assented to the same.

10. Because, as it was found impracticable and impossible to carry out the terms of the deed, all the parties thereto, on or about the first day of April, 1874, abandoned all attempts to comply with its provisions and surrendered and waived all claims under it, and adopted an entirely different and distinct course of procedure, under and by means of the deed of April 6, 1874.

We have carefully considered the reasons thus assigned by the plaintiff for alleging the deed of November 1, 1873, to be fraudulent, and· are of opinion that the matters upon which· some of them are founded abundantly justify and sustain the allegation.

The demurrer admits that at the time the deed was executed and delivered, the A. & W. Sprague Manufacturing Company were hopelessly insolvent; and the recitals in the deed show that they had no expectation or hope of being able to pay the claims then outstanding against them, at maturity or within three years thereafter; and they were desiring and seeking to obtain an extension of the time of payment for the period of three years from the first of the following January. In this condition and under these circumstances they assumed, or made themselves primarily liable for, the debts of the firm of A. & W. Sprague, and the individual debts of Amasa Sprague and William Sprague, without the consent of the plaintiff and other creditors, added them to their own·indebtedness, and made their notes, payable in three years, for the whole amount ($14,000,000), and then joined the other grantors in the execution of the deed, and thereby pledged their property for the payment of those notes or such of them as should be accepted by their creditors and the creditors of A. & W. Sprague, Amasa Sprague, and William Sprague in discharge of their respective claims.

The obvious effect of these proceedings, if they should be

sustained, would be to charge the debts of Amasa Sprague and William Sprague, partnership and individual, or such of them as were due to creditors who assented to the terms of the deed in the manner and within the time prescribed by its conditions, upon the property of the A. & W. Sprague Manufacturing Company, described in the deed, and entitle those creditors to share in the distribution of that property or its avails *pro rata* with the assenting creditors of the company, to the exclusion of the plaintiff and all the other non-assenting creditors. And this effect would be in accordance with the manifest intention and purpose of the parties to the deed. There can be no question, therefore, that the deed was executed by the company, and by the Spragues who joined them in its execution, with the intent and purpose to hinder, delay, and defraud the creditors of the company, unless it was divested of its fraudulent character by the circumstance that it embraces the partnership property of A. & W. Sprague and the individual property of the partners, Amasa Sprague and William Sprague, and the property of Mary Sprague and Fanny Sprague. But the deed was not divested by that circumstance of its fraudulent character.

The Manufacturing Company, being insolvent and hopelessly so, had no right, legal or moral, to pledge their property for the payment or security of the debts of the Spragues or any other debts than their own. They could do so only by imperilling the rights of their own creditors, or exposing them to sacrifice or injury. The amount of the debts of A. & W. Sprague, Amasa Sprague and William Sprague, assumed by the company, and intended to be secured by the deed, is nowhere in the deed disclosed. The deed is also silent in respect to the amount of debts due to the creditors of the company; and the amount of the fund which the property of the Spragues and of the company, respectively, will produce, cannot be known until the several properties shall be sold. But if the debts due to the assenting creditors of A. & W. Sprague, Amasa Sprague and William Sprague, should exceed in amount the fund produced by

the sale of their property and the property of Mary Sprague and Fanny Sprague, and the property of the company, upon sale thereof, should produce a fund in excess of the debts due to the assenting creditors of the company, it is obvious that the creditors of the company, in the distribution of the fund which the trustee would be bound to make, would not receive the share or proportion to which they would be justly entitled. This was sufficient to give a fraudulent character to the deed, and render it a security to which it was not reasonable to expect a creditor willing to take his fair share of the proceeds of the property would assent. The deed was therefore void as a mortgage of real estate in this state, as against the plaintiff and all other creditors who did not assent to it within the time limited by its provisions.

But the deed contains other features which impart to it a fraudulent character, and render it void as a mortgage of real estate in this state, as against non-assenting creditors. It empowers the defendant Chaffee, as trustee, and any other person who may succeed him in the trust under its provisions, to run and operate the mills and print-works of the A. & W. Sprague Manufacturing Company, at the expense of the trust estate, and for the benefit of A. & W. Sprague, Amasa Sprague and William Sprague and of their creditors, as well as of the Manufacturing Company and their creditors, for a period of time limited only by the trustee's discretion, unless one-fifth in amount of the holders of the notes issued and outstanding under the deed intervene, and request him in writing to dispose, by sale, of the estate. The effect, therefore, of this power, if executed, and losses be sustained in its execution, would be to enlarge the encumbrance upon the trust estates and diminish the value of the only property or interest to which the non-assenting creditors could resort to obtain satisfaction of their claims—that is, the equity of redemption in the mortgaged premises. If profits should be made in the execution of the power, they would inure to the benefit of the assenting creditors of the Spragues as well as of the assenting

creditors of the company. The non-assenting creditors would thus be hindered, delayed, and defrauded.

These conclusions render it unnecessary to express an opinion upon the other reasons assigned by the plaintiff in his complaint for alleging the deed to be fraudulent.

We pass, therefore, to the consideration of the question whether the deed of April 6, 1874, is sustainable as a conveyance of the real estate of the grantors in this state. This deed is, in form and effect, a general assignment by the A. & W. Sprague Manufacturing Company of all their property in this state and elsewhere not exempted from attachment by law, to the defendant Chaffee in trust for the benefit of all their creditors, but preferring those creditors who at the time of the execution of the deed had assented or within nine months after the 1st day of January, 1874, should assent to the terms of the deed already considered, to their other creditors. By one of its provisions the trustee is authorized to run the mills and print-works, which constitute a part of the property assigned, or to allow the assignors to run them, if for the best interest of the creditors, the profits being receivable by the trustee for the purposes specified in the deed. The effect of this. provision, considered in connection with other provisions in this deed and the provisions in the deed of November 1, 1873, is to empower the trustee or the assignors with his permission to run the mills and print-works at the expense and risk of the creditors of the assignors, but free from restraint, interference or control on their part, for so long a time as he shall deem it to be for the best interest of those creditors so to do. No debtor has a right thus to postpone or put in peril the rights of his creditors without their consent, and a conveyance which attempts so to do, or which is executed for the purpose of depriving creditors of their right to enforce their just claims against the property of their debtor by placing it beyond their reach or control for an unlimited, indefinite, or uncertain period, is in conscience as well as in law fraudulent. There are numerous cases reported in which assignments in trust for the benefit of creditors have been sustained, al-

though they contained provisions for the continuance of the business of the assignor, either by himself or by his trustee. *De Forest* v. *Bacon*, 2 Conn., 633; *Kendall* v. *The New England Carpet Co.*, 13 Conn., 383; *Foster* v. *Saco Manufacturing Co.*, 12 Pick., 451; *Woodward* v. *Marshall*, 22 id., 468; *Hitchcock* v. *Cadmus*, 2 Barb., 381; *Ravisies* v. *Alston*, 5 Ala., 297; *Janes* v. *Whitbread*, 11 Com. Bench, 406. But it will be found, on examination of these cases, that in most of them the business authorized by the assignments to be carried on was merely ancillary to winding up the debtor's affairs, and that the authority was given with the view of more effectually promoting the interests of the creditors. The cases of *De Forest* v. *Bacon*, *Kendall* v. *The New England Carpet Co.*, *Woodward* v. *Marshall*, and *Janes* v. *Whitbread*, were cases of that character. Where, however, the authority is given chiefly for the benefit of the debtor, or where it is intended to hinder and delay creditors for an unreasonable period in the collection of their debts, it renders the deed fraudulent and void.

In the case of *Owen* v. *Body*, 5 Ad. & El. 28, (31 Eng. Com. Law, 254,) the deed in question, which was an assignment to trustees for the benefit of creditors with preferences, contained provisions investing the trustees with power to carry on the trade of the debtor, and for that purpose to lay out money in payment of rent and keeping up the stock in trade. And the court held the deed to be void, as it was an instrument to which creditors could not reasonably be expected to assent. Lord WENSLEYDALE, in giving his opinion in the House of Lords, in the case of *Cox* v. *Hickman*, 9 Com. Bench, N. S., 101, referred to that deed and said that the provision it contained that the effects of the debtor, which ought to have been divided equally amongst his creditors, should be put in peril by being employed in trade, prevented the deed from being a fair deed and good against creditors.

In the case of *American Exchange Bank* v. *Inloes*, 7 Md., 380, the deed in controversy contained a provision empowering the trustee at his discretion to sell the property

covered by it, gradually, in the manner and on the terms in which, in the course of their business, the assignors had sold and disposed of their merchandise; and for that reason the deed was adjudged fraudulent. In giving the opinion of the court, MASON, J., says: "Without adverting to other objectionable, if not fatal provisions, in this deed, the one to which we have just referred is sufficient, in the judgment of this court, to render the deed null and void as against the creditors. It simply seeks, through the instrumentality of a trustee, to provide for carrying on the business of the concern in the same manner in which it had been before conducted, and for an indefinite period, free of all control or interference on the part of the creditors. Surely, if such a provision in a deed is not calculated to hinder and delay creditors, we are at a loss to know what would have such an effect short of a conveyance in trust for the benefit of the grantor himself. A debtor cannot thus postpone his creditors to an indefinite period without their assent. A conveyance which thus attempts to deprive creditors of their rights to enforce their claims against the property of their debtor, by placing it beyond their control for an uncertain and indefinite period, must be regarded in conscience and in law as a fraud."

The same court in the case of *Jones* v. *Syer*, 52 Md., 211, held that an assignment in trust for the benefit of creditors, which authorized the trustee to carry on and conduct the business which had been carried on and conducted by the assignor, "for such time as in his judgment it shall be beneficial so to do," or to sell all the goods and stock in trade mentioned in the assignment, "at such times, in such manner, and for such prices as he may deem proper," was, as against the creditors of the assignor, void. In giving their opinion in this case the court say: "It is obvious that the certain effect of this clause would be to hinder and delay creditors; and as against them such provision renders the deed utterly void. It is an attempt on the part of the debtor to place his property for an uncertain and indefinite period beyond the reach of his creditors, and to make their

rights in a great measure dependent upon the uncontrolled discretion of a trustee of the debtor's own selection. The law will tolerate no such attempt, but will treat the act as a fraud upon creditors, and the instrument as simply void as against them."

In the cases of *Dunham* v. *Waterman*, 17 N. Y., 9; *Gardner* v. *Commercial National Bank of Providence*, 13 R. I., (not yet published;) *Same* v. *Same*, 95 Ill., 298, the same doctrine was recognized and enforced.

The only remaining clause in the assignment deserving of consideration is the clause immediately following the one authorizing the trustee to run the mills and print-works or allow the assignors to run them. That clause provides that "in case the same are thus run by him or otherwise he shall not be liable personally for the expenses or losses arising therefrom, but the same shall be chargeable to the trust fund vested in him," and it furnishes additional evidence of the fraudulent purposes for which the assignment was executed. The law upon this subject is correctly laid down in the opinion of RUGGLES, C. J., in the case of *Litchfield* v. *White*, 3 Seld., 438. He says: "A failing debtor by an assignment puts his property where it cannot be reached by ordinary legal process. He puts it into the hands of a trustee of his own selection—often his particular friend, sometimes a man to whom the creditors would not have been willing to confide such a trust. The debtor has an interest in the application of the trust funds to the payment of his debts, but the creditors have usually a far greater interest therein, and that interest depends in many cases on the competency and diligence of the assignee. The debtor cannot be permitted, by creating a trust for his creditors, to place his property where it cannot be reached by ordinary legal remedy, and at the same time exempt the trustee from his proper responsibility to his creditors. What degree of diligence, then, would the assignee have been bound to exercise in the business of his trust if the clause in question had been omitted? That question is answered by one elementary writer in these words: 'A trustee is bound to manage the

trust property for the benefit of his *cestui que trust* with the care and diligence of a provident owner.' Willis on Trustees, 125; and by another, as follows: 'A trustee is, called upon to exert precisely the came care and solicitude in behalf of his *cestui que trust* as he would do for himself, but a greater measure than this a court of equity will not exact.' Lewin on Trustees, 152. And in Story's Equity it is said that where a trustee has acted in good faith in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property. § 1272. The first of these writers measures the liability of the trustee by the diligence of a provident owner. The two last mentioned, by the diligence of the trustee in his own concerns. But there is no substantial difference between them. The degree of diligence which a trustee uses in his own affairs cannot properly be the subject of judicial inquiry. Every trustee must be presumed by the court, before whom the account is taken, to use in his own concerns such diligence as is commonly used by all prudent men. Jones on Bailm., 30. The diligence of a provident man, therefore, is the measure of a trustee's duty. If it were otherwise, there would be one rule for a careless, and a different rule for a vigilant trustee; and the careless trustee would be exonerated in the same case in which the vigilant would be held liable. This was never intended, either by the elementary writers or by the authorities from which they deduce their conclusions." A trustee being, under these rules, bound to manage and employ the trust property for the benefit of the *cestui que trust*, he is liable for every loss sustained by reason of his negligence or want of ordinary care, prudence and caution, as well as by his positive misconduct. Willis on Trustees, 172, 173; 2 Kent's Comm., 230; Burrill on Assignments, 3d ed., § 460. And a provision in a deed of assignment which exempts the trustee from that degree of liability, or in any way restricts it to a less degree than that which the

·DeWolf *v.* Sprague Manufacturing Co.

law imposes upon trustees, renders the assignment void. Burrill on Assignments, 3d ed., § 231, and note 4.

The assignment before us wholly exempts the trustee from any liability for losses arising from the running of the mills and print-works by him, or by the assignor with his permission, even if the losses should be occasioned by his own gross neglect or misconduct, and it might happen that a great portion of the trust property would from these causes be lost or destroyed. The assignment must, therefore, be pronounced fraudulent as against non-assenting creditors upon that ground.

The Superior Court, for these reasons, is advised that the plaintiff's complaint is sufficient, and that the demurrer thereto should be overruled.

In this opinion the other judges concurred.